**Jackson CHAMBERS, Plaintiff,**

**v.**

**Raymond R. BEATTY et al., Defendants.**

**No. 67 Civ. 1800.**

United States District Court

S. D. New York.

Jan. 29, 1968.

712

Davis & Cox, New York City, for plaintiff, Chester C. Davis, Lola S. Lea, New York City, of counsel.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendants, Harold F. McGuire, C. Lamar Barnes, New York City, of counsel.

PALMIERI, District Judge.

Plaintiff, a shareholder of the County Trust Co. (Bank), a state member insured bank of the Federal Reserve System, in bringing this action to seek disclosure of certain information by the Bank alleges, *inter alia,* that the Bank has not complied with the Federal Reserve Board's (Board) Regulation F, 12 C.F.R. 206. The Board has the power under the Financial Institutions Supervisory Act of 1966 (1966 Act), 12 U.S.C. § 1818(b), to issue a cease and desist order against the Bank if it finds violations of its rules or regulations. Section 1818(b) (1) provides:

> If, in the opinion of the appropriate Federal Banking agency, any insured bank or bank which has insured deposits is engaging or has engaged, or the agency has reasonable cause to believe that the bank is about to engage, in an unsafe or unsound practice in conducting the business of such bank, or is violating or has violated, or the agency has reasonable cause to believe that the bank is about to violate, a law, rule or *regulation* * * * the agency may issue and serve upon the bank a notice of charges in respect thereof. * * * and shall fix a time and place at which a hearing will be held to determine whether an order to cease and desist

therefrom should issue against the bank. (Emphasis supplied).[1]

A similar provision relating to the powers of the Federal Home Loan Bank Board, 12 U.S.C. § 1464(d) (2) (A), was involved in Murphy v. Colonial Federal Savings & Loan Ass'n, 388 F.2d 609 (2d Cir., December 11, 1967) where the court upheld the district court's granting of a stay of the proceedings before it pending an application to the administrative agency. This Court has jurisdiction of these proceedings. 15 U.S.C. § 78aa.

For the reasons which follow it is this Court's decision that the Board has primary jurisdiction over this matter and that the present proceedings should be stayed pending an application by the plaintiff to the Board for a determination whether the Bank has complied with Regulation F.

The Board has primary jurisdiction of this suit. Where broad powers of regulation and control are conferred upon administrative agencies, the doctrine of primary jurisdiction is applied in order to avoid conflicts and inconsistencies between them and the courts, and in order to insure uniformity of treatment and regulation. Its ultimate aim is thus to make of the courts and the regulating bodies "collaborating instrumentalities of justice," the "appropriate independence of each" being "respected by the other," so that the standards applied by them in the same general field can be concordant.[1a] See, United States v. Western Pac. R. Co., 352 U.S. 59, 62–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); Allied Air Freight, Inc. v. Pan American World Airways, Inc., 340 F.2d 160 (2d Cir. 1965), cert. denied, 381 U.S. 924, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965). Deference to the

---

1. 12 U.S.C. § 1813(q) provides: "The term 'appropriate Federal banking agency' shall mean * * * the Board of Governors of the Federal Reserve System in the case of a State member insured bank (except a district bank) * * *." The Bank is a state member insured bank.

1a. The quoted language has been borrowed from the opinion of Mr. Justice Frankfurter in United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

administrative body is particularly appropriate in this case. Regulation F is recent in origin and, as yet, it has been the subject of little administrative interpretation. The provisions of the regulation and the alleged violations are couched in terms of the accounting standards generally applicable to banks. The Board possesses the expertise to handle these intricate questions and the authority under the law to make decisions of policy in this area. See Far East Conference v. United States, 342 U.S. 570, 574–576, 72 S.Ct. 492, 96 L.Ed. 576 (1952). The Board exercises considerable regulatory authority over member banks and this authority should not be impinged upon by this Court.

█ The fact that the plaintiff's asserted right to disclosure is founded on the Securities Exchange Act of 1934 and not Title 12 of the United States Code does not, as plaintiff suggests, require this Court to by-pass the Board. In 1964 the Securities Exchange Act of 1934 (1934 Act) was amended to provide that the duties of the Securities and Exchange Commission under Title 15 of the United States Code were to be vested in the Board with respect to the securities of banks which are members of the Federal Reserve System, 15 U.S.C. § 78*l*(i) and Regulation F was promulgated on this authority. The provision for cease and desist orders for violations of the Board's regulations was enacted in 1966 and there is nothing in it which would exclude regulations of the Board pursuant to § 78*l*(i), cf. Reich v. Webb, 336 F.2d 153 (9th Cir. 1964). Nor is there any indication in the legislative history of the 1966 Act that Congress intended the term "regulation" to apply only to regulations promulgated under Title 12. Congress was cognizant of its 1964 amendment of the 1934 Act and had Regulation F before it.[2] If Congress had intended to limit the Board's power with respect to regulations pursuant to the 1934 Act, it would have so provided in the statute.

Plaintiff's inclusion of a plea for damages in his amended complaint does not require a different result. Referral to the Board is not for remedial purposes alone. It serves to insure uniformity of regulation where specialized experience and competence are needed. The priority of jurisdiction by the administrative agency is conditioned "not upon the ability of the administrative agency to grant

---

2. Representative Wright Patman, Chairman of the House Committee on Banking and Currency, submitted several questions to the Board, the answers to which he felt would "greatly assist deliberation on this bill [1966 Act]". Hearings on S. 3158 Before the House Comm. on Banking and Currency, 89th Cong., 2d Sess. 251–52 (1966). Three of those questions related to the Board's authority under amendments of the 1934 Act. They were:

24–25. What reports are required to be filed with your agency by banks under your jurisdiction other than ordinary examination reports?

27. What rules or regulations have you promulgated to protect the interests of minority stockholders, and what comments do you care to make with respect to your experience under the Securities Acts Amendments of 1964, requiring certain commercial banks to make public information as to their operations?

28. In the two years since enactment of the Securities Acts Amendments have

you achieved your avowed goal of uniform financial reporting by commercial banks under your supervision? Id. at 253.

In responding to these questions the Board furnished a copy of Regulation F to the Committee and referred to the F–2 reports required by it. Id. at 261. Further, in answer to the question "What additional statutory authority is required for you to carry out your responsibility with respect to examination, audit and *reporting* requirements?", the Board said "enactment of S. 3158 would fill the need for 'intermediate' powers with respect to the supervision of banks" [emphasis supplied]. Id. No mention is made of limiting the cease and desist provisions to violations of regulations under Title 12 of the United States Code. The provisions of the 1934 Act are also mentioned by the Board in reply to a question as to criminal penalties for violations of the laws it administers. Id. at 258–59.

**714**

a remedy, but upon the presence of problems calling for the kind of consideration which only the administrative agency is in a position to give." Apgar Travel Agency v. International Air Transport Association, 107 F.Supp. 706, 711 (S.D. N.Y.1952) (citing General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 [1940]; El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053 [1946], and other authorities, n. 17). Moreover, there is much the Board could do in this case to satisfy the plaintiff or, at the very least, to reduce the size and burden of this litigation. It can compel disclosure in accordance with its Regulation F; it can amend its regulations to call for more complete disclosure; and it can probe into and proscribe any improper activity in the management of the Bank. If violations have occurred or are occurring, action by the Board would go a long way in the direction of granting plaintiff the relief he is seeking.

Congress has enacted a comprehensive plan for the regulation of banks and has limited the courts' role in it. See 12 U.S.C. §§ 1818(h) and 1818(i). The federal agencies involved in supervising financial institutions predicted that "[t]he enactment of * * * [the 1966 Act would] * * * result in substantial improvement in the supervision and regulation of banks and savings and loan associations." Hearings on S. 3158 Before the Subcomm. on Financial Institutions of the House Comm. on Banking and Currency, 89th Cong., 2d Sess. 319–19T (1966). It would be unwise for this Court to go outside the architecture of that plan.

The proceedings herein are stayed pending the outcome of an application by the plaintiff to the Federal Reserve Board for an administrative determination as to whether or not the defendants have violated its Regulation F. The defendants' motions will be held in abeyance and their disposition will abide the outcome of the plaintiff's application.

An order to this effect is filed herewith. This order includes a provision intended to prevent any undue delay or hardship by permitting either party to apply on notice and for good cause for a modification of the terms of the stay.