**Michael RATNER, for himself and all others similarly situated, Plaintiff,**

v.

**CHEMICAL BANK NEW YORK TRUST COMPANY, Defendant.**

**No. 69 Civ. 4195.**

United States District Court, S. D. New York.

Dec. 24, 1969.

On Rehearing March 3, 1970.

5. Clearfield Trust Co. et al. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

Jack Greenberg and Philip G. Schrag, New York City, for plaintiff.

Cravath, Swaine & Moore, by John W. Barnum, Howard G. Kristol, New York City, for defendant.

CANNELLA, District Judge.

Defendant moves for an order staying any further proceedings herein until twenty days after a ruling is obtained from the Federal Reserve Board, which the defendant asserts has primary jurisdiction in this controversy. The motion is denied.

Plaintiff alleges in his complaint that the defendant has violated the Consumer Credit Protection Act [1] [hereinafter "Act"] in regard to its billing practices under a Master Charge Credit plan. The violation alleged is that the defendant fails to notify *all* participants in the plan, whether assessed a finance charge or not, of the annual interest rate each time they are billed.[2] The defendant at present apparently notifies only those participants who have actually incurred a finance charge. The facts in the case are essentially not in dispute, and the issue raised is basically a question of law: whether defendant's practices violate the Act and Regulation Z.

Defendant contends that the Federal Reserve Board has primary jurisdiction in this matter since the defendant is a member of the Federal Reserve System,[3] and that this court should, in accordance with the doctrine of primary jurisdiction, allow the Board to initially determine the issues in this case. Defendant asserts that the Board's jurisdiction is derived from 15

1. 15 U.S.C. § 1601 et seq. This act is commonly referred to as the Truth-In-Lending Act.

2. See 15 U.S.C. § 1637(b); 12 C.F.R. § 226.7 (Regulation Z, promulgated by the Federal Reserve Board).

3. See Exhibit "C" of defendant's motion papers.

U.S.C. § 1607(a) (1) (B), which states in part:

(a) Compliance with the requirements imposed under this subchapter shall be enforced under

(1) section 1818 of Title 12, in the case of * * *

(B) Member banks of the Federal Reserve System (other than national banks), by the Board.

This Section, in conjunction with 12 U. S.C. § 1818, allows the Board, in effect, to act as a policeman over its member banks. It does not allow a private party to bring an action before the Board to seek redress or injunctive relief for any violation of the Act. However, the Act does provide a civil remedy for private persons under 15 U.S.C. § 1640, and subsection (e) thereunder gives any United States District Court jurisdiction over such an action. The court finds that the two sections thus provide separate jurisdiction for separate remedies —§ 1607 when the Federal Reserve Board acts on its own initiative; and § 1640 when a private party brings a civil action under the Act.[4]

■■ When there is no dual jurisdiction between the district court and the administrative agency, the doctrine of primary jurisdiction does not operate. See Armour & Co. v. Alton R. R., 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771 (1941); Davis, Administrative Law 363 (1965); 2 Am.Jur.2d, Administrative Law § 789.

■ Even assuming arguendo that the Board does have concurrent jurisdiction here with the district court, the doctrine of primary jurisdiction is nevertheless inapplicable. As stated previously, the facts in this controversy are essentially not in dispute. What is in-volved here is a question of law, to wit, whether the defendant has complied with the Act and Regulation Z. When only a question of law is involved, the doctrine is not applicable. Rather, the district court will retain jurisdiction since the administrative agency's expertise in the particular field which would be useful in resolving complicated questions of fact is not required. See Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 521, 78 S.Ct. 851, 2 L.Ed. 2d 926 (1958) (Frankfurter, J., dissenting); United States v. Western Pacific R. R., 352 U.S. 59, 62–70, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); New York, Susquehanna & Western R. R. v. Follmer, 254 F.2d 510 (3d Cir. 1958); 2 Am.Jur.2d Administrative Law § 793. This case is unlike Chambers v. Beatty, 281 F.Supp. 711 (S.D.N.Y.1968), which involved the general accounting practices of banks[5], and thus necessitated the exercise of the Board's expertise in that area. In addition, that case involved a complicated factual pattern, whereas this case involves essentially a question of law.

■■ Although the doctrine of primary jurisdiction is in general applied to insure uniformity of treatment and regulation, its application and the granting of a stay pending administrative action rests in the sound discretion of the court considering all the facts and circumstances presented to it. The question of law presented in this case not only concerns the defendant and the oth-. er member banks of the Federal Reserve System, it transcends that limited group and will undoubtedly have a bearing on the other institutions extending an open line of credit to their customers. The Board does not directly regulate these other creditors. In the interests of uniformity and interpretation of the Act,

4. See 2 U.S.Cong. & Admin.News 1968, p. 1987; Report of the Committee on Banking and Currency, United States Senate, Report No. 392, 90th Cong. 1st Session, p. 9 which states: "The enforcement of the bill would be accomplished largely through the institution of civil actions. * * * The committee has not recommended investigative or enforcement machinery at the Federal level, largely on the assumption that the civil penalty section will secure substantial compliance with the act."

5. Specifically, Regulation F, 12 C.F.R. § 206.

and to best carry out the objectives of Congress in passing the Act, it would be most desirable to have this court pass upon the questions of law involved herein as soon as possible, without a prior determination of the Board.[6] Any determination of the Board would be reviewable in the courts,[7] and needless delay should be avoided.

Accordingly, this court, after a consideration of all the facts and circumstances surrounding this case, finds that the doctrine of primary jurisdiction is inapplicable and, exercising its discretion, denies the defendant's motion for a stay.

### On Motion for Reargument

Defendant moves for reargument of its application for a stay in this action pending a determination by the Board of Governors of the Federal Reserve System [hereinafter "Board"] which was denied by this court in an opinion filed December 30, 1969. In the alternative, the defendant moves for an amendment of this court's prior decision and order so as to include a certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

The motion for reargument is granted, and pursuant to General Rule 9(m) of this Court, the court has reconsidered its prior decision and order without directing the parties to orally reargue or file affidavits. Upon reconsideration, the court adheres to its original decision and order. The certification pursuant to 28 U.S.C. § 1292(b) requested by the defendant is denied.

▇ The defendant asserts in its motion to reargue that this court was in error when it concluded that the Board did not have concurrent jurisdiction

with this court over plaintiff's action seeking damages for defendant's failure to comply with the Consumer Credit Protection Act.[1] Defendant argues that although the Senate Bill[2] did not contain any provision for administrative enforcement, both the House Bill[3] and the Act contain such a provision, thus making the doctrine of primary jurisdiction operable. But this provision does not necessarily mean that both the Board and this court have concurrent jurisdiction over this dispute. The administrative enforcement section of the Act was enacted by Congress in the hope that private action by consumers would not be required. This was due in part to recognition by Congress that most of the consumers who are preyed upon by unscrupulous creditors or merchants would not have the financial means to institute legal actions to assert their rights under the Act. Thus, the various administrative agencies were given enforcement power to act on their own initiative in the hope that they would protect the "unsophisticated consumer".[4] They were empowered, as the court stated in its previous opinion, to act, in effect, as policemen over their various areas of responsibility. However, when a given agency has taken no action on its own initiative and it becomes necessary that a private party bring an action, the courts were specifically authorized and empowered by the Act to give him relief. 15 U.S.C. § 1640. It would, in this court's opinion, be incongruous for Congress, on the one hand, to be so concerned with the fact that consumers, in the main, would lack funds to seek relief[5] and, on the other, to require them, if they did seek such relief, to proceed before two bodies—first, the applicable administrative body in order to

---

6. It may be appropriate, as the plaintiff suggests, for the Federal Reserve Board to submit an amicus brief concerning this matter.

7. See 12 U.S.C. § 1818(h).

1. Commonly referred to as the "Truth-In-Lending Act", Pub.L. No. 90–321, 82 Stat. 146, 15 U.S.C. § 1601 et seq.

2. S. 5, 90th Cong., 1st Sess. (1967).

3. H.R. 11601, 90th Cong., 1st Sess. (1967).

4. See 2 U.S.Cong. & Admin.News 1968, pp. 1975–1976, 2023.

5. See id. at 1975.

ascertain if the Act and Regulation Z had been violated, and then the courts to obtain damages. This is true since, as the defendant concedes,[6] the administrative body, in this case the Board, cannot give the plaintiff the same relief as the court. It could, at most in this case, issue a cease and desist order pursuant to 12 U.S.C. § 1818 and could not give plaintiff damages. Section 1640 of the Act which provides for damages and civil liability specifically confers jurisdiction only on "any United States district court, or in any other court of competent jurisdiction"[7] and not upon any administrative agency. In addition, this court has been unable to ascertain any authority which would *require* the Board to proceed with a cease and desist hearing, although it is possible for plaintiff to petition it to hold such a hearing. Indeed, even if the Board chose to hold a hearing and ultimately issued a cease and desist order here, it would be a pyrrhic victory for the plaintiff. Plaintiff does not seek a cease and desist order, nor does he demand any injunctive relief. What he does seek are the damages for the wrong allegedly done to him that are provided for by 15 U.S.C. § 1640(a).

As previously asserted,[8] even assuming *arguendo* that the Board does have concurrent jurisdiction with this court, none of the necessities for the exercise of prior administrative action are present herein. There is no question of administrative discretion involved. For example, the Board does not set any rates, nor in this case grant exemptions. In fact, Section 1637(b) and Regulation Z, 12 C.F.R. § 226.7(b), do not vary materially from one another. There are no technical or intricate matters of fact to be resolved between the parties, but rather a question of law,[9] to wit, the meaning of the following statement in the Act: "The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account *or* with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable * * *."[10]

In addition, the "new development" cited to the court by the defendant is persuasive in itself that the doctrine of primary jurisdiction is not applicable and justifiable in this case. The doctrine is a flexible one, and when an administrative agency's position is known, there is no need for its prior determination. Indeed, the defendant itself asserts that the policy statement of the Board's attorney, Garwood,[11] "accurately reflects the Board's interpretation of its Regulation Z and that any subsequent determination by the Board would be consistent with the views expressed in that statement."[12] Furthermore, it should be relatively easy for the parties to obtain an affirmance or rejection of this view expressed by the Board.[13] However, in either case, with the posi-

---

6. See Defendant's Memorandum in Support of its Reargument Motion, pp. 4, 7.

7. 15 U.S.C. § 1640(e).

8. See this court's prior opinion at p. 986.

9. See Civil Aeronautics Board v. Modern Air Transport, 179 F.2d 622 (2d Cir. 1950); Kovarsky v. Brooklyn Union Gas Co., 279 N.Y. 304, 18 N.E.2d 287 (1938). See also the cases cited on p. 986 of the court's opinion of Dec. 24, 1969.

10. 15 U.S.C. § 1637(b). Emphasis added. The merits of this controversy are not before the court. However, it appears that the phrases "there is an outstanding balance in that account" and "with respect to which a finance charge is imposed" are in the *disjunctive* and *not* the *conjunctive*. Thus, upon either condition, the information would be required to be set forth.

11. See 1, CCH, Consumer Credit Guide ¶ 3807–3 (1969).

12. Defendant's Memorandum in Support of its Reargument Motion, p. 12.

13. This could be accomplished by a letter of inquiry, which apparently was the method utilized to precipitate the Board's statement, or by affidavit, or by an opinion letter.

tion of the Board known, there can be no justification for the operation of the primary jurisdiction doctrine. See, e. g., United States v. Western Pacific R. R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); 2 Am.Jur.Administrative Law § 792.

 In view of the court's reaching the same decision on reargument that it did in its initial decision, the defendant further requests that the court grant a certification for an immediate interlocutory appeal pursuant to 28 U.S. C. § 1292(b). The granting of such a certification is discretionary. However, the procedure set forth in Section 1292(b) should be applied sparingly and only used in exceptional cases. See Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959); Leighton v. New York, Susquehanna & Western R. R., 306 F.Supp. 513 (S.D.N.Y.1969); Barrett v. Burt, 250 F.Supp. 904 (S.D. Iowa 1966); United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624 (D.Minn.1964).

 The facts in this case are, in the court's view, simple and not in substantial dispute. In fact, it may be possible for either party here to readily avail themselves of an accelerated judgment procedure, such as a motion for summary judgment. The allowance of the appeal here would not "materially advance the ultimate termination of [this] litigation,"[14] but rather could only serve to delay it. Furthermore, this court finds that there is not a controlling question of law involved here to which there is a substantial ground for differences of opinion. Thus, the court will not grant a certification pursuant to 28 U.S.C. § 1292(b).

The defendant's motion for reargument is granted, and the court adheres to its original decision and order. The defendant's request for certification pursuant to 28 U.S.C. § 1292(b) is denied.

So ordered.