212 Va. 57 (1971)
BOARD OF SUPERVISORS OF FAIRFAX COUNTY
v.
CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA.
Record No. 7504.
Supreme Court of Virginia.
June 14, 1971.
Duane L. Searles, Assistant County Attorney for Fairfax County (Donald C. Stevens, County Attorney for Fairfax County, on brief), for appellant.
[D.C.]; Robert A. Levetown [D.C.], on brief), for appellee.
Present, Snead, C.J., I'Anson, Carrico, Gordon and Harman, JJ.
1. Code section providing that rate schedules filed by public utility become effective unless Corporation Commission acts on them does not apply to telephone companies. Constitution resolves apparent conflict between Code sections and requires prescription of rates by Commission for transmission companies such as telephone companies.
2. Act of legislature does not evidence intention to amend Constitution and there is no evidence before court that amendment of Code was enacted upon recommendation of State Corporation Commission.
3. Court should not construe Code section so as to bring it in conflict with Constitution unless such construction is inescapable. Apparent conflict between chapters of Code will be resolved in favor of chapter dealing specifically with subject.
4. Corporation Commission did not approve or prescribe rates when it "accepted" rates as filed, Commission opinion states filing became "automatically effective". There was no full hearing and record does not contain finding of fact sufficient to support approval or prescription of proposed rates.
Appeal from an order of the State Corporation Commission.
Joseph E. Blackburn (William B. Barfield [D.C.]; Howard C. Anderson
GORDON
GORDON, J., delivered the opinion of the court.
On December 3, 1969, The Chesapeake and Potomac Telephone Company of Virginia filed with the State Corporation Commission new rate schedules rounding intrastate toll rates to the next higher instead of the nearer cent, changing the Company's installation and rearrangement charge and providing a charge for non-published or non-listed stations. The Commission fixed December 22, 1969 in its courtroom as the time and place for a public hearing and directed that notice of the hearing be published in newspapers across the State.
Before the hearing, the Board of Supervisors of Fairfax County filed a petition asking the Commission to suspend enforcement of the revised rates for at least sixty days. The County Board also asked the Commission to postpone the hearing and to require the Company to file its testimony and exhibits thirty days before the postponed hearing date. When the Commission convened on December 22, 1969, counsel for the County Board moved the Commission to rule on the petition, but the Commission announced that it would defer its ruling until the conclusion of the hearing.
Counsel for the Company made an opening statement describing the proposed revised rates, after which the Commission heard statements from two individuals. [1] Counsel for the County Board then renewed the motion previously made, stating that he would withhold any presentation until the Commission had ruled on the motion. Whereupon, the Chairman of the Commission read the Commission's decision from which this appeal was prosecuted:
{"The tariff filing proposes to increase toll charges by rounding out the charge per minute over three minutes to the next higher cent instead of the nearest cent. This increase will not be burdensome some to the average telephone user."
{"In addition, the filing proposes to increase the charges for the installation of new telephones and the moving of existing telephones *59 to new locations. A nonrecurring charge is proposed for future but not for present nonpublished telephone numbers. This added charge will tend to discourage the widespread use of unlisted numbers."
{"Because of the action of the Federal Communications Commission in reducing interstate toll charges, the Bell System is engaged in seeking increases in local exchange rates throughout the country to make up for that loss of revenue. This Commission hopes to prevent any increase in local exchange rates in Virginia."
{"The present filing is accepted in order to make it harder for the telephone company to justify any increase in local exchange rates. The local exchange rates are the ones that affect the vast majority of the consumers."
On March 18, 1970, after this appeal was noted, the Commission rendered an opinion respecting its decision on December 22, 1969. Under the section headed "The Evidence Considered", the opinion referred to three matters.
First, the opinion pointed out that "[with] the mass of detailed information gathered by its large and expert staff, the Commission keeps in touch with the utilities". None of this information was brought forth at the public hearing on December 22, 1969 or incorporated in the opinion of March 18, 1970 or otherwise made part of the record.
Secondly, the opinion took judicial notice of certain facts:
}"[The] Commission is familiar with matters of common knowledge, such as that interest rates are high, that the value of the dollar is being eroded by inflation, and that construction costs are soaring. It is a matter of common knowledge that the cost of rendering reasonably good telephone service is going up. And the accounting staff has estimated that if the increased charges that became effective on January 5th [1970] produce $2,900,000 a year, the company's rate of return will increase from about 7% to about 7 1/4%."
Thirdly, the opinion disclosed what the Commission had done after it learned about the November 5, 1969 "agreement" between the Federal Communications Commission and the American Telephone and Telegraph Company "to decrease the nationwide interstate toll charges": *60 
{"Faced with the unfavorable situation brought about by the conduct of the Federal Commission, the S.C.C. [State Corporation Commission] called in the representatives of the local telephone company [The Chesapeake and Potomac Telephone Company of Virginia] and told them that this Commission intended to put off as long as possible any increases in local exchange rates, and that it would consider only schedules of charges that did not increase local exchange rates. The Commission allowed the filing in this case to become automatically effective because it is clearly to the advantage of the local exchange customers."
 Counsel for the County Board attacks the December 22, 1969 decision on the ground that the Commission approved the new rates proposed by the Company without hearing evidence to support its decision and without affording the Board an opportunity to be heard. The Company contends, however, that the Commission did not approve the proposed rates. Rather, the Company contends that the Commission exercised its discretion not to suspend the enforcement of the proposed rates, permitting them to become effective as "company-made rates" under Code | 56-240.
Code | 56-237 provides that no change shall be made in utility rates "except after thirty days' notice to the Commission". Code | 56-238 provides that the Commission, upon complaint or on its own motion, may suspend the enforcement of any proposed rates pending its investigation of their reasonableness. Code | 56-240 provides:
{"Unless the Commission so suspends such schedule of rates, tolls [and] charges . . ., or changes thereof, the same shall go into effect as originally filed by the public utility, upon the date specified in the schedule, subject, however, to the power of the Commission, upon investigation thereafter, to fix and order substituted therefor such rate or rates, tolls [and] charges . . . as shall be just and reasonable . . .." Va. Code Ann. | 56-240 (1969).
But Code | 56-478 provides:
{"The State Corporation Commission shall supervise, regulate and control all telephone companies doing business in this State in all matters relating to the performance of their public duties and their charges therefor, . . . and to that end the Commission shall, *61 from time to time, prescribe and enforce against such companies, in the manner hereinafter directed, such rates [and] charges . . . as may be reasonable and just. And the Commission may, from time to time, alter or amend any such rates [and] charges . . .. All rates [and] charges . . . adopted or acted upon by any such company in conflict with those prescribed by the Commission within the scope of its authority shall be unlawful and void." Va. Code Ann. | 56-478 (1969).
We agree with the Company's contention that Code | 56-240 sanctions "company-made rates" because it provides that rate schedules filed by a public utility become effective unless the Commission acts to suspend them. Conversely, Code | 56-478 sanctions only "commission-made rates" because it provides that only those rates prescribed by the Commission become effective.
Code | 56-240 is part of chapter 10 of title 56, relating to heat, light, power, water and other utility companies generally; Code | 56-478 is part of chapter 15 of title 56, relating to telegraph and telephone companies. In 1964, the General Assembly amended chapter 10, adding these italicized words to Code | 56-241: "The power of the Commission over the rates of telephone companies shall be as defined by this chapter [chapter 10] and by chapter 15 (| 56-458 et seq.) of this title." Va. Acts of Assembly 1964, ch. 195 at 257.
Since Code || 56-240 and 56-478 appear to conflict, the question is which section applies. The Constitution of Virginia, as now in effect, dictates the answer.
Section 156(b) of the Constitution charges the Commission with the duty of regulating the charges of transmission companies and prescribing for such companies such rates and charges as may be reasonable and just. A telephone company is a transmission company, as defined in | 153 of the Constitution. Section 156(b) prescribes that any rates or charges adopted by any such company shall be void if inconsistent with those prescribed by the Commission. And it provides that the Commission's authority to prescribe rates and charges for transmission companies shall be paramount. [2] The provisions *62 of Code | 56-240 sanctioning "company-made rates" therefore cannot apply to rates of a telephone company consistently with | 156(b) of the Constitution as written.
"* * *"
"The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges and classifications of traffic for transportation and transmission companies shall be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the General Assembly to legislate thereon by general laws . . .."
 The Company contends, however, that the 1964 amendment to Code | 56-241, supra, amended | 156(b) of the Constitution as authorized by | 156(j) of the Constitution. Section 156(j) authorizes the General Assembly to amend | 156(b) "upon the recommendation of the State Corporation Commission". But neither the title to nor the recital in the 1964 amendment of Code | 56-241 evidences an intention to amend the Constitution. And neither the title nor the recital, nor any other evidence before us, shows that the amendment was enacted upon the recommendation of the State Corporation Commission. So we reject the Company's contention.
 We should not construe Code | 56-241 so as to bring it into conflict with the Constitution unless such a construction is unavoidable. See Dean Paolicelli, 194 Va. 219, 72 S.E.2d 506 (1952). We therefore interpret that section as prescribing that the Commission's power over telephone company rates shall be as provided in chapters 10 and 15 of title 56 only insofar as those chapters do not conflict. And insofar as those chapters do conflict, chapter 15, dealing specifically with telephone companies, prevails. So Code | 56-478, requiring Commission approval or prescription of rates, rather than the Code | 56-240 provisions that sanction "company-made rates", applies to rates of a telephone company.
 The record does not indicate that the Commission approved or prescribed the new rates proposed by the Company. The proceeding on December 22, 1969 did not satisfy the procedural due process requirement of a full hearing on the question of the approval or prescription of rates by the Commission. See City of Norfolk Virginia Electric and Power Co., 197 Va. 505, 518, 90 S.E.2d 140, 149 (1955), citing Ohio Bell Telephone Co. Public Utilities Comm., 301 U.S. 292 (1937). And the record does not contain a finding of *63 facts sufficient to support an approval or prescription of the proposed rates.
See Petersburg Gas Co. City of Petersburg, 132 Va. 82, 110 S.E. 533 (1922). [3]
Furthermore, the Chairman announced at the conclusion of the hearing on December 22, 1969 that "[the] present filing [of the Company's proposed rate schedules] is accepted". And the March 18, 1970 opinion recited that on December 22, 1969 the Commission "allowed the filing in this case to become automatically effective".
The Commission on December 22, 1969 therefore did not approve or prescribe the new rates proposed by the Company as required by | 156(b) of the Constitution and Code | 56-478 to make the rates effective. The rates not having become effective, we vacate the decision of December 22, 1969, from which this appeal was prosecuted, and remand the proceeding to the Commission for any further action that may be appropriate. [4]
Vacated and remanded.
NOTES
[1] As pointed out by one of the Commissioners, the first individual's statement had no bearing on the case. The second individual, an Army colonel, voiced objections to the service connection and non-listed charges. The Commission's opinion rendered on March 18, 1970, see infra, did not mention these statements.
[2] "(b) The Commission shall have the power and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies, and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates [and] charges . . . as may be reasonable and just, which said rates [and] charges . . . the Commission may, from time to time, alter or amend. All rates [and] charges . . . adopted, or acted upon, by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void.
[3] Since the "company-made rate" provisions of Code | 56-240 do not apply in this case, we do not intimate that the requirements mentioned in the text apply to a decision by the Commission not to suspend a schedule of rates filed by a utility to which | 56-240 applies.
[4] We leave open the question raised by the Company whether an appeal lies to this Court from a decision of the Commission pursuant to Code | 56-240 to permit proposed rates to go into effect automatically as a result of the Commission's failure to suspend them. Code | 56-240 is not applicable to this case and the proposed rates did not go into effect.