Alan WEIDBERG et al., Plaintiffs,

v.

AMERICAN AIRLINES, INC., et al.,
Defendants.

No. 70 C 1879 and related cases.

United States District Court,
N. D. Illinois, E. D.

Jan. 12, 1972.

Multidistrict Litigation, Docket No. 58.

Edward A. Berman, Schlifkin & Berman, Chicago, Ill., for plaintiffs.

H. Templeton Brown, Bryson P. Burnham and Lee N. Abrams, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NAPOLI, District Judge.

This Multidistrict Litigation was transferred to this court for consolidated pretrial proceedings by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407(a), In re Air Fare Litigation, 322 F.Supp. 1013 (1971). The Panel realized that the seven actions which were filed in the wake of the decision of the Court of Appeals for the District of Columbia in Moss v. Civil Aeronautics Board, 139 U. S.App.D.C. 150, 430 F.2d 891 (1970) presented our federal judiciary with the problem of conflicting and overlapping class actions. Under these circumstances the Panel held that common questions of fact existed justifying a

transfer under § 1407 in regard to the problem of the makeup, potential overlapping and damages to the purported classes. Therefore, five actions pending in districts other than the Northern District of Illinois were transferred to this district, considered by the Panel to be the most convenient for all concerned, and have been consolidated with the two actions currently pending before this court.

The factual situation involved in this litigation is most thoroughly recited in the *Moss* opinion at 430 F.2d 891. Hence this court will only summarize those facts which are necessary for an understanding of the issues currently before the court. Under the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq. (1970), the air carriers must file with the Civil Aeronautics Board (hereinafter C.A.B. or Board) and keep open to public inspection tariffs showing their fares for air transportation; § 1373(a). The carriers are prohibited from charging or collecting any compensation which varies from the tariffs on file or from granting rebates or refunds therefrom, with certain exceptions not applicable here; § 1373(b). The carriers may change the tariffs by filing with the Board and posting amended tariffs thirty days before their effective date; § 1373(c). However, the C.A.B. itself is authorized to prescribe a lawful rate to be charged when it is of the opinion that the present rate is unjust or unreasonable, or unjustly discriminatory, preferential, or prejudicial; § 1482(d). It must, however, give notice and conduct a hearing before exercising this power. Subsection (e) of § 1482 enumerates the substantive standards the Board is directed to consider in determining rates and subsection (g) empowers it to suspend any newly filed tariff, pending a hearing regarding the tariff's lawfulness, if it provides the affected carrier with a statement of reasons therefor.

Petitioners in *Moss*, some 32 Congressmen, had complained to the C.A.B. concerning its practice of holding ex parte meetings with representatives of the carriers. Despite these complaints, the meetings ripened into new tariffs increasing passenger fares which were filed by 20 of the main domestic air carriers in August of 1969.

On September 12, 1969, the Board issued Order 69–9–68, docket 21322 which suspended the carriers' tariffs under § 1482(g) on the grounds that said tariffs "may be unjust [or] unreasonable." The Order further found that the carriers were in need of additional revenue due to increased expenses and proposed its own fare formula, which would in effect grant a revenue increase of 6.35%, and announced that such tariffs would be acceptable without suspension. Predictably, the carriers withdrew their suspended tariffs and filed new tariffs in accordance with the C.A.B.'s formula all of which became effective on or by October 15, 1969.

A petition for review of the C.A.B.'s order was filed in the Court of Appeals for the District of Columbia by the *Moss* petitioners which resulted in that court holding that the October 1969 tariffs filed by the carriers actually constituted rate making by the Board under § 1482(d) and that as such the C.A.B.'s order and rates were invalid and unlawful for failure to comply with that section's notice and hearing provisions. The court remanded the case to the C.A.B. for further proceedings. Also, the *Moss* petitioners filed a supplemental complaint with the Board asking that it conduct a proceeding to determine the appropriate relief for the carriers' customers who paid the now unlawful fares. An investigation entitled "Reasonableness of Passenger Fares charged by Domestic Trunkline and Local Service Carriers from October 1, 1969, through October 14, 1970", was initiated by the Board's Order 71–2–109, docket 23140 in response to these events.

Following the *Moss* decision, these seven lawsuits were filed, as hereinbefore mentioned, each claiming to represent the class, or a part thereof, of the

public who paid the alleged overcharges as a result of the unlawful fares. Following their transfer to this court, the air carrier defendants have moved to stay the proceedings herein, pending completion of the C.A.B. investigation. In support of this motion, defendants assert that the only possible claim for relief of plaintiffs, if any, is upon the theory of unjust enrichment which depends upon the reasonableness *vel non* of the unlawful fares. They also assert that the issue of reasonableness is the central facet of this case because the Federal Aviation Act (hereinafter "Act") makes the implied standards for fares or rates that of justness and reasonableness, as well as the fact that the carriers are undoubtedly entitled to a reasonable rate of return for their services. Further, they claim that the question of the reasonableness of the fares is a matter within the primary jurisdiction of the C.A.B., hence these proceedings should be stayed. Plaintiffs in opposition state that their theory of recovery is not necessarily unjust enrichment, making the question of reasonableness immaterial and their claim for relief is independent of the Act. They also assert that the C.A.B. has no jurisdiction, primary or otherwise, over this cause as the issues are questions of law, not fact; that the C.A.B. has no power to conduct investigations or determine retroactively, reasonableness of fares; and that it has no power to award reparations. Finally, plaintiffs charge that the only currently effective tariffs the carriers could charge under § 1373(b) were the original tariffs on file before the carriers filed their new tariffs in August 1969. Consequently, plaintiffs believe themselves to be entitled to recover without consideration of the reasonableness of the unlawful fares.

█ The decisions in the field of administrative law overwhelmingly support the proposition that if the issue in controversy involves the reasonableness of fares, then that question falls within the primary jurisdiction of the appropri-ate administrative agency and this court should defer to such agency for the initial determination. See, e. g., Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 2d 553 (1907); Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Civil Aeronautics Board v. Modern Air Transport, 179 F.2d 622 (2nd Cir. 1950); Lichten v. Eastern Airlines, 189 F.2d 939 (2nd Cir. 1951); and Tishman & Lipp, Inc. v. Delta Airlines, 275 F.Supp. 471 (S.D.N.Y.1967), affirmed 413 F.2d 1401 (2nd Cir. 1969). The doctrine of primary jurisdiction serves as a flexible guide for the courts in determining whether it will be more efficacious for the judiciary or an administrative body to make the initial determination of the question in issue. Therefore it is not technically a question of "jurisdiction" but rather a matter of judicial self restraint in conformance with comity and a healthy respect for the statutory authority of the administrative agency. The rationale of the doctrine is a recognition of the need for an orderly co-ordination of work between the judiciary and administrative bodies for the reason that those bodies can apply their knowledge or expertise to the question and thereby aid the court by laying a foundation for a more intelligent disposition of the question as well as insuring uniformity of result. See, Davis, Administrative Law Treatise (West Publishing Co. 1958) § 19.01 et seq. As such, this court believes that a stay in proceedings while this cause is referred to the C.A.B. would be a matter within its sound discretion. Ratner v. Chemical Bank New York Trust Co., 309 F.Supp. 983 (S.D.N.Y.1970).

█ Since the question of the reasonableness *vel non* of the fares falls within the primary jurisdiction of the C.A.B., the plaintiffs in order to avoid a stay must proceed on the theory either that they have a claim for relief independent of unjust enrichment, which would rest upon common-law or statutory construction, or that they are absolutely entitled

to recover due to the declaration of unlawfulness by the *Moss* court. At the expense of lengthening this opinion the court will turn to and examine the pertinent authorities and arguments of the respective parties on these issues.

The case which presents the most factual similarity to this litigation is Atlantic Coast Line R.R. Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935) and is cited by defendants for the proposition that the only theory of recovery is unjust enrichment. In *Atlantic Coast* the carrier collected a higher set of rates which had been prescribed by order of the Interstate Commerce Commission upon its finding that the original rates were unjustly discriminatory. Previously the Supreme Court held that the ICC's order was unlawful for want of complete and adequate findings of fact. New findings were subsequently made, supporting the same schedule of rates, and were upheld by the high Court. Various shippers and the State of Florida sued to recover the increase in rates collected before the rate schedule was supported by valid findings.

Mr. Justice Cardozo for the Court considered the action to be one for money had and received which is founded in equity, and analogized with an action to recover a satisfaction of judgment which is later reversed. It was stated:

> The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. (Citations omitted). The question no longer is whether the law will put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he had been able to collect it.

295 U.S., at 309–310, 55 S.Ct., at 716–717.

In this type of situation, Cardozo applied the test as follows:

> To prevail, the claimants must make out that in the circumstances here developed a fixed and certain duty has been laid upon a court of equity to make the carrier pay the price of the blunders of the commerce board in drawing up its findings.

295 U.S., at 314, 55 S.Ct., at 718.

Thus *Atlantic Coast* does not adopt any rigid formula for recovery; rather the equities of the cause as set forth in the context of the factual circumstances will serve as the polestar for a court of equity in reaching a decision. In that case, restitution was ultimately denied due to the inequity of the shippers' position, in that the original rates were so unreasonably low as to be confiscatory. The decisive element in the Court's weighing of the respective equities appears to have been the reasonableness of the schedule of rates. Supporting this interpretation is Cardozo's statement in reversing the decree of the district court that:

> The claimants do not sustain the burden that is theirs by showing that the master set up a reasonable schedule [allowing partial restitution to the shippers]. They must show that the other schedule, the one set up by the [Interstate Commerce] Commission, is unreasonable. In the absence of such a showing the carrier does not offend against equity and good conscience in standing on its possession and keeping what it got.

295 U.S., at 318, 55 S.Ct., at 720.

This court believes with only the possible reservation to be mentioned infra that the last quoted passage from *Atlantic Coast* is a more accurate description of the holding in that case than to say that plaintiffs must proceed upon the theory of unjust enrichment. Defendants can not impose their theory of recovery upon the plaintiffs' claim for relief; however, the court agrees that there is considerable merit in the position that in weighing the equities of this case, the question of the reasonableness of the fares will play an important or even decisive role. Paraphrasing Cardozo, in order for plaintiffs to prevail it must appear that the equities are

so in favor of the plaintiffs that this court is duty bound to make the air carriers pay a considerable sum as reparations for the blunder of the C.A.B. There is no question that the air carriers have the right to seek increased fares, subject to the suspension power of the C.A.B. The *Moss* court found the fares to be unlawful not because they were unjust or unreasonable, or that they violated the substantive rate making factors contained within § 1482(e) as plaintiffs claim, but rather for the reason that the C.A.B. failed to give notice and conduct a hearing in prescribing rates under § 1482(d). Despite the scathing criticism of the C.A.B. by the *Moss* court, this court's reading of the *Moss* opinion leads it to the conclusion that the defect in the administrative proceeding was of a procedural nature. Thus, the question of the reasonableness *vel non* of the unlawful fares becomes particularly appropriate in weighing the equities of the respective parties.

■ If a determination of unreasonableness is made, coupled with the *Moss* court's decision holding the C.A.B.'s order and its fares invalid then there is a basis for finding that the retention by the air carriers of the increase of the fares would violate equity and good conscience. The Act implies that fares should be just and reasonable, as well as not discriminatory, prejudicial or preferential. If the fares are found to be reasonable, on the other hand, then the only equity on plaintiffs' side is the procedural defect committed by the C.A.B. Since the Act allows reasonable fares and it can not be doubted that the carriers are entitled to a reasonable rate of return, plaintiffs would have a weak case if the fares were reasonable and just. Another factor to be weighed in this regard is the admonition of § 1373(b) against a carrier charging any fare other "than the rates, fares, and charges specified in its currently effective tariffs." The carriers had no way of determining that the C.A.B.'s order and their fares would be invalidated by the *Moss* court. They take the position

that it was their statutory obligation to charge the fares filed with the Board but subsequently found to be defective. Plaintiffs counter with the argument that the *Moss* court's decision voided these fares *ab initio*. Since the tariffs filed by the carriers and suspended by the C.A.B. had thereupon been withdrawn by the carriers, the only remaining tariffs which could possibly be the currently effective tariffs were the original, pre-October 1969 tariffs which the carriers sought to increase. The plaintiffs then conclude that § 1373(b) forbade the carriers from charging any but the 1969 fares and that they are ipso facto entitled to restitution for violation of the statute. Mr. Justice Cardozo dealt with a similar issue in *Atlantic Coast* and held that an order of an administrative body found to be void for a procedural defect is only voidable, and he further stated:

> The carrier was not at liberty to take the law into its own hands and refuse submission to the order without the sanction of a court. It would have exposed itself to suits and penalties, both criminal and civil, if it had followed such a path. . . . Obedience was owing while the order was in force.

295 U.S., at 311, 55 S.Ct., at 717.

This court believes that the same is true under the Act in question in this case. *Lichten v. Eastern Airlines, supra.* The tariffs filed with the Board but subsequently found to be unlawful were voidable due to the C.A.B.'s error; until a court of proper jurisdiction declared them to be unlawful, however, they were the only tariffs which were on file with the C.A.B. and were the only "currently effective" tariffs. Any other result would create chaos and destroy the purpose of the Act: uniformity of treatment. A contrary holding would allow or compel a carrier to charge a fare at variance with its filed tariffs on the pretext that it may be procedurally defective. Under such a situation, plaintiffs' construction of § 1373(b) would in

fact undermine and destroy the very purpose of that section. Therefore, this court believes that until an order or tariff of the C.A.B. has been administratively or judicially overturned the carriers are bound by it. See, Alco-Gravure Div. of Publications Corp. v. American Airlines, 173 F.Supp. 752 (D. Maryland 1959).

Of course, the respective equities will depend upon the entire circumstances of the case, of which the question of reasonableness is but one, albeit an important factor to be considered.

As was mentioned earlier in this opinion, the question of the reasonableness of any fare or tariff is within the primary jurisdiction of the appropriate administrative agency. See, e. g. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., *supra*. The rationale for this doctrine was said to be in the *Abilene* case the policy of the statute providing for uniformity of treatment. It was thought that such uniformity would be impossible if individual courts were free to pass on the question of reasonableness—the spectre of different juries reaching conflicting results was sufficient to lead the court to decline involvement in this question in favor of the administrative bodies.

Thus far this opinion has mainly relied upon cases decided under the Interstate Commerce Act. Since this case will turn on another statute, the Federal Aviation Act, it is appropriate to consider whether this analysis will change under the different act.

The case of Lichten v. Eastern Airlines, 189 F.2d 939 (2nd Cir. 1951) is one of the more prominent cases decided under the Federal Aviation Act dealing with primary jurisdiction. There, the reasonableness of a tariff containing an exculpatory clause was challenged. In holding that the question was one properly for the C.A.B. to handle rather then the court, the court cited *Abilene* and emphasized the necessity for uniformity of decisions on the question. In C.A.B. v. Modern Air Transport, *supra,* it was also held that the question of reason-

ableness is within the primary jurisdiction of the Board, but in that case the court held that it could interpret the C.A.B.'s regulations and determine whether or not there had been a violation thereof. See, also Tishman & Lipp, Inc. v. Delta Airlines, *supra*, and Furrow & Co. v. American Airlines, 102 F.Supp. 808 (W.D.Okla.1952). It should also be noted that the decision in *Atlantic Coast* dealt with the theory of recovery when an administrative body has committed procedural error and was not limited to interpreting or depending upon the Interstate Commerce Act. Therefore, the court believes that opinion sufficiently broad in scope to be applicable to the case at bar.

One problem is presented by two Supreme Court decisions. In *Abilene* and T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959) it was held for different reasons that a court had no power to hear a claim for reparations which was based upon a challenge to the reasonableness of tariffs. *Abilene* was decided under Part I of the Interstate Commerce Act which provides for the award by the I.C.C. of reparations and for private cause of action for violation of its terms. That court held, despite a broad savings clause, that a common-law cause of action would be "absolutely inconsistent" with the purpose of the Act, which is to insure uniformity of rates, and is abrogated by the statutory remedy. *T.I.M.E.* was decided under the Motor Carriers portion of the Interstate Commerce Act which at that time did not provide for reparations to be awarded by the administrative agency nor for a private cause of action, which in this respect is similar to the Federal Aviation Act. That court refused to imply a statutory action and further held that the absence of a reparation provision within the Act was indicative of a Congressional intent to abrogate any claims for relief including those at common-law. Thus, if an analogy can be drawn between the Federal Aviation Act and these portions of the Interstate Commerce Act, no claim for relief may exist. However, it is not ap-

propriate at this time to reach a decision on this question. The investigation of the C.A.B. into the question of the reasonableness of fares in question may render moot this difficult problem. Also, the factual situations and statutes involved in these two cases are different from those in this litigation and the cases may not be applicable. Therefore, this court believes that the most expeditious and efficient course of action for this litigation would be to by-pass this problem, which counsel have not dealt with in depth in their respective memoranda, since it is an issue collateral to the motion currently before the court, until a determination of the reasonableness *vel non* of the fares has been made.

While the main arguments of the plaintiffs have been considered and dealt with earlier in this opinion, the court will briefly comment on their remaining issues. Certain plaintiffs attempt to distinguish the *Atlantic Coast* decision from *Moss* on the ground that the defect in the former was procedural while in the latter it was a violation of the substantive rate making standards contained within the statute. This court can not agree and reads *Moss* as invalidating the order and fares of the C.A.B. on the grounds that the second tariffs filed by the carriers in response to the C.A.B.'s suggested formula constituted rate making by the Board. As such, a hearing after due notice was required by the statute and, as admitted by the C.A.B., was not held. Basically, for the reasons that judicial review was in this manner frustrated and that the public was effectively excluded from the decision making process, the *Moss* court overturned the increased fares. This, in the court's opinion, was a procedural defect, and it believes that the quotations of plaintiffs are taken out of the full context of the *Moss* opinion.

Also, plaintiffs contend that the C.A.B. has no power to grant reparations or to investigate into the past unreasonableness of a tariff. While the first statement is certainly true, it does not follow that any action or investigation of the C.A.B. must prove to be futile for that reason. The doctrine of primary jurisdiction is predicated upon the rationale of the administrative agency laying a foundation for a more informed decision by the court. Therefore, power to issue a final order adjudicating the claims or granting relief on the part of the agency is not necessary before a question can be referred to such an agency. The Act also grants general investigatory powers to the Board and the *Atlantic Coast* decision supports the theory that the agency may conduct an investigation in these circumstances.

Plaintiffs cite the cases of I.C.C. v. Louisville & Nashville R.R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431 (1913) and Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918). The court finds that these cases are inapplicable for the reason that in those instances the appropriate administrative agency had prior to the litigation considered the reasonableness of the tariffs. The first case stands only for the proposition that the findings of the I.C.C. are prima facie correct rather than conclusive. The latter case held that the party who was charged excessive freight charges was damaged despite the possibility that it may have passed on the overpayments to its customers. Finally, the case of United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956) is also distinguishable since it was decided under the entirely different statutory rate making scheme of the Natural Gas Act.

Finally, the court notes that the origin of this litigation arose with the C.A.B. and the Court of Appeals for the District of Columbia. That Court reversed the order of the Board and remanded to the Board for further proceedings. In response to that remand and the supplemental complaint of the *Moss* petitioners, the C.A.B. initiated its present investigation. For this court to enjoin this investigation as plaintiffs have requested or to conduct an inde-

pendent and duplicative determination of the same or similar question as being considered by the Board would, in effect, be an infringement upon the jurisdiction of the Court of Appeals for the District of Columbia. This court is unaware of any precedent granting to a district court the power to interfere with the orders or mandate of a Court of Appeals of another circuit.

■ Accordingly, the defendants' motion for a stay is granted and all proceedings in this litigation are ordered to be held in abeyance until further order of this court. The purpose of this stay is to await the findings of the C.A.B. on the question of the reasonableness *vel non* of the fares charged between October 1969 and October 1970. The parties are expected to aid such investigation and are urged to participate therein. The court also expects liaison counsel for the plaintiffs and defendants to periodically inform the court as to the progress of those proceedings.

It is so ordered.