# Richmond

## THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA v. ARLINGTON COUNTY, ET AL.

November 27, 1972.

Record No. 8020.

Present, Snead, C.J., Carrico, Harrison and Harman, JJ.

*Joseph E. Blackburn (Warner F. Brundage, Jr. [D.C.]; Howard C. Anderson [D.C.]; Robert A. Levetown [D.C.], on brief), for appellant.*

*Henry M. Massie, Jr., Assistant Attorney General; Henry E. Howell, Jr. (Andrew P. Miller, Attorney General; Vann H. Lefcoe, Assistant Attorney General, on brief), for appellees.*

Per Curiam.

The Chesapeake and Potomac Telephone Company appeals a decision of the State Corporation Commission ordering a refund of charges collected by the Company pursuant to rates approved by the Commission and subsequently held ineffective by this court in *Fairfax County* v. *C & P Tel. Co.*, 212 Va. 57, 182 S. E. 2d 30 (1971).

On December 3, 1969 the Company filed a new rate schedule with the Commission pursuant to Code § 56-240. On December 22, 1969, public notice having been given, the Commission accepted the filing and permitted the new rates to become effective on January 5, 1970. Fairfax County appealed.

On June 14, 1971, in *Fairfax County, supra,* we held that (1) Section 156 (b) of the Constitution of Virginia charges the Com-

mission with the duty of regulating the charges of transmission companies and prescribing for such companies rates and charges as may be reasonable and just; and (2) a telephone company is a transmission company as defined in Section 153 of the Constitution and that Section 156 (b) of the Constitution prescribes that any rates or charges adopted by any such company shall be void if inconsistent with those prescribed by the Commission. We said that the Commission's authority to prescribe rates and charges for transmission companies is thus paramount, and that the provisions of Code § 56-240 sanctioning "company-made rates" cannot be applied to rates of a telephone company consistent with Section 156 (b) of the Constitution.

We then held that the record before us did not indicate that the Commission approved or prescribed the new rates proposed by the Company on December 3, 1969, and that the proceeding on December 22, 1969 did not satisfy the procedural due process requirement of a full hearing on the question of the approval or prescription of rates by the Commission. Having decided that the Commission, in sanctioning company-made rates, had not complied with the requirements of Section 156 (b) of the Constitution and Code § 56-478, we held that the rates had not become effective. We vacated the Commission's order of December 22, 1969 and remanded the proceeding to the Commission for appropriate action.

Following the remand, and by its order of July 6, 1971, the Commission set September 27, 1971 as the date for the hearing on the remand. At the same time it ordered the Company to continue to collect the rates under the rate schedule filed December 3, 1969.

On September 1, 1971, upon a petition for a preemptory writ of mandamus filed by the Attorney General against the Commission and its members, we granted a writ of mandamus wherein the Commissioners were ordered to "immediately take such action as is necessary to halt further collections by the Chesapeake and Potomac Telephone Company of Virginia of the charges authorized by the Commission's decision of December 22, 1969, which was vacated by this court's order of June 14, 1971".

The remand hearing by the Commission on September 27, 1971 was limited to the issue of the proper disposition of the funds collected by the Company under the rates which we held ineffective. A majority of the Commission concluded that our decision "indicated that the Commission's judgment was to be narrowly limited and

required them to order a refund". It was from the Commission's order of a refund on September 3, 1971 that the Company prosecutes its appeal as a matter of right.

The order of the Commission directing a refund is consistent with our decision in *Fairfax County, supra,* and the writ of mandamus that we issued.

We are not dealing here with a mere technicality or a procedural error. The increased charges collected by the Company from its customers between January 5, 1970 and September 3, 1971 were never prescribed by the Commission. They were company-made rates and increases in violation of Section 156 (b) of the Constitution and Code § 56-478. They never became effective and had no valid or legal existence. Therefore any increases by reason of the rate schedule filed on December 3, 1969 were improperly collected and should be refunded.

The Company argues that it will be inequitable to order a refund by it of monies collected pursuant to rate tariffs ruled invalid by this court. Admittedly the Commission was of opinion that the increase in rates proposed by the Company was justified, and that the Company's filing of its proposed new rate schedule, pursuant to Code § 56-240, accorded with the practice and procedure it had previously followed and which had Commission approval. Irrespective of this, we cannot say that a failure to comply with the Constitution of Virginia and with the statute that we find applicable is a mere procedural imperfection or oversight. If the procedure followed constitutes a denial of due process, and we have said that it did, we are dealing with substantive law and not a procedural omission.

The Commission failed to apply appropriate criteria and failed to make the inquiries prerequisite to a valid exercise of its rate-setting authority. For us to permit the Company to retain the increased charges would be giving legal effect to company-made rates, and to the Commission's invalid order approving company-made rates.

Counsel for the Company and appellees have cited numerous cases in support of their respective positions. The Company relies principally upon *Atlantic Coast Line* v. *Florida,* 295 U. S. 301 (1935), and *Weidberg* v. *American Airlines,* 336 F. Supp. 407 (N.D. Ill. 1972). Appellees say that *Atlantic Coast Line, supra,* is the exception to the general rule. They contend that the leading case on restitution is *Arkadelphia Milling Co.* v. *St. Louis S. W. Ry. Co.,* 249 U. S. 134 (1919), and they also cite *Williams* v. *Washington Metropolitan*

*Transit Com'n.*, 415 F. 2d 922 (D. C. Cir. 1968), *cert. den.* 393 U. S. 1081 (1969), and *Middle West Motor Freight Bureau* v. *United States*, 433 F. 2d 212 (8th Cir. 1970). It is unnecessary for us to review the authorities cited by counsel for the parties. It suffices to say that we find no case in which restitution was denied where the rates and tariffs which produced the increases have been held to be ineffective for the reasons given in *Fairfax County, supra*.

The Company argues that the rates it proposed on December 3, 1969 were not unreasonable and unwarranted. It points to the fact that on the 27th day of September, 1971 the Commission, following a hearing, approved and prescribed a $33.4 million rate increase for the Company which encompassed and exceeded substantially all the increases in the filing of December 3, 1969. The fallacy of the Company's argument is that the September 27, 1971 rate increases were *prescribed by the Commission* following a proceeding and hearing had in compliance with Section 156 (b) of the Constitution and Code § 56-478. The rate increases contemplated by the December 3, 1969 filing were company-promulgated and simply allowed to become effective by the Commission. They were not prescribed.

In view of the pronouncements of the individual commissioners, and their subsequent action on September 27, 1971, it is reasonable to believe that the increases proposed by the Company in December, 1969 would have been allowed and prescribed had a proper proceeding been conducted. However, we do not know this, for we do not know what evidence would have been adduced by the appellees and objectors at a hearing. We do not know what decision the Commission would have made had the Company proceeded in December, 1969 in accordance with Section 156 (b) of the Constitution and Code § 56-478, instead of pursuant to Code § 56-240. There was never a proper proceeding conducted by the Commission looking to its approval and prescription by it of the increase in rates which resulted in the $4.7 million ordered refunded. We cannot relate the propriety of the Commission's action on September 27, 1971 to its earler void action on December 22, 1969.

Further, we do not find that the equities are so compelling as to favor permitting the Company to retain the excess charges. We are told that the amount involved is approximately $4.7 million. This amount will be refunded to those customers of the Company who paid improper increases in rates, by reason of the new rate schedule,

between January 5, 1970 and September 3, 1971. It is noted that between September 3, 1971 and November 17, 1971 customers of the Company were charged in accordance with the old rate schedule in effect prior to January 5, 1970. Were we to deny restitution by the Company this would constitute preferential treatment of this latter group.

Again concerning the equities involved, the Company is entitled to a fair return on its investment. To earn such a return experience shows that it is necessary for it to file, from time to time, applications for rate increases or adjustments. Any adverse effect on the Company of the refund ordered by the Commission would be reflected in the Company's financial position and statement and could be a factor to be considered by the Commission in future rate-making proceedings initiated by the Company.

We conclude that both law and equity demand that the refunds be made as directed by the Commission.

The order of the Commission is accordingly

*Affirmed.*