Illini Coach Company, Inc., an Illinois Corporation, Plaintiff-Counterdefendant-Appellant, v. Illinois Highway Transportation Company, Defendant-Counterclaimant-Appellee.

Gen. No. 10,255.

Third District.

March 28, 1960.

Rehearing denied April 25, 1960.

Released for publication April 25, 1960.

Thomas, Mulliken, and Mamer, of Champaign, for plaintiff-counterdefendant-appellant.

Olsen and Cantrill, of Springfield (Harold M. Olsen, of counsel) for defendant-counterclaimant-appellee.

JUDGE ROETH delivered the opinion of the court.

The parties to this suit are common carriers each operating a bus line under certificates of convenience and necessity issued by the Illinois Commerce Commission. In 1942 proceedings were commenced before the Commission regarding the right of the parties to operate along a given route and these proceedings were not concluded until the Supreme Court rendered its decision favorable to defendant, Illinois Highway Transportation Company. Black Hawk Motor Transit Co. v. Illinois Commerce Commission, 398 Ill. 542, 76

N.E.2d 478. The case at bar is an outgrowth of that litigation and involves the following facts.

On June 28, 1945, after a previous hearing, the Commission rescinded the certificate which it had previously granted defendant to operate a bus line over a prescribed route and granted a certificate to plaintiff over the same route. Defendant perfected its appeal to the Circuit Court of DeWitt County and immediately moved to stay the order of the Commission rescinding its certificate and the order of the Commission granting to plaintiff its certificate. A hearing was had upon the motions and the Circuit Court stayed the order rescinding the certificate of defendant but denied the motion to stay the order granting plaintiff's certificate. In December of 1945 the Circuit Court heard the case on the merits and sustained the order of the Commission. Defendant then ceased to operate along the route while plaintiff continued in its operation along said route.

Appeal was perfected to the Supreme Court but no further effort was made to stay the order of the Commission. While this appeal was pending plaintiff filed this suit in the Circuit Court of DeWitt County claiming damages for the alleged illegal operation by defendant from the date the Commission order became final, to wit, August 16, 1945, to December 13, 1945, the date that defendant ceased operations. In 1948 the Supreme Court ruled in favor of defendant and voided the orders of the Commission rescinding defendant's certificate and granting plaintiff's certificate over the route in question. In January, 1948, following the decision of the Supreme Court, defendant filed its counterclaim seeking to recover revenues received by plaintiff from the date the Commission order became final, i. e., August 16, 1945, to the date of the Supreme Court mandate, i. e., January 23, 1948. The suit was filed in 1946 but it was not until 1952 that the

pleadings were settled. The record does not explain the long delay in settling the pleadings. In any event the action was again permitted to lie dormant until the Circuit Court on its own motion set the case for hearing in 1957. Further motions followed and the case was finally tried in 1958 on the complaint and counterclaim.

The complaint and counterclaim in this cause allege substantially the same thing, i. e., the illegal operation by the other party over the route in question, with plaintiff's claim covering only that period of time from the date the Commission order became final to December of 1945, and defendant's counterclaim alleging damages for a period of time commencing with the finality of the Commission order and terminating in 1948 when the plaintiff ceased operation pursuant to the mandate of the Supreme Court in Black Hawk Motor Transit Co. v. Illinois Commerce Commission, supra. The claim of both parties is based on restitution. The Circuit Court granted judgment to the defendant on its counterclaim in an amount equal to the total receipts of the plaintiff for that period of time from August 16, 1945, to December 13, 1945. The appeal is from the order granting judgment to defendant, plaintiff waiving any appeal from the adverse judgment on its complaint and defendant waiving any appeal from the adverse judgment on the counterclaim covering that period of time after December, 1945.

Thus it appears that each party operated over the route in question by authority of a certificate granted by the Commission from August 16, 1945, to December 13, 1945. Defendant ceased operation on the latter date but plaintiff continued operations until January 23, 1948. On that date, i. e., January 23, 1948, plaintiff ceased operation pursuant to the mandate of the Supreme Court and defendant resumed operation. As heretofore noted, plaintiff's complaint is for loss of

171

revenues from August 16, 1945, to December 13, 1945, and defendant's counterclaim is for loss of revenues from August 16, 1945, to January 23, 1948. Judgment was rendered in defendant's favor for the total revenues received by plaintiff from August 16, 1945, to December 13, 1945.

The question involved is one of first impression in this state. No authority has been cited covering this exact point and none has been found.

Several points have been raised by plaintiff and defendant. However, in our view the question can be reduced to the single issue of whether a suit for damages by way of restitution can be maintained by one carrier against another who is operating along the same route, pursuant to a certificate and order of the Illinois Commerce Commission that was subsequently voided by the Supreme Court.

We believe that Sections 49-a, 67, 71 and 76 of the Public Utilities Act (Chap. 111⅔, par. 49-a, 71, 75, and 80, Ill. Rev. Stat.) are material in this case. They provide insofar as this case is concerned as follows:

Section 49-a. "No public utility shall abandon or discontinue any service without first having secured the appoval of the Commission . . ."

Section 67. ". . . An application for rehearing shall not excuse any corporation or person from complying with and obeying any rule, regulation, order or decision or any requirement of any rule, regulation, order or decision of the Commission theretofore made, or operate in any manner to stay or postpone the enforcement thereof, except in such cases and upon such terms as the Commission may by order direct . . ."

Section 71. "The pendency of an appeal shall not of itself stay or suspend the operation of the rule, regulation, order or decision of the Commission but during the pendency of such appeal the circuit or superior court, or the Supreme Court, as the case may be, in its

172

discretion may stay or suspend, in whole or in part, the operation of the Commission's rule, regulation, order or decision.

"No order so staying or suspending . . . an order . . . of the Commission shall be made by the Court otherwise than upon three days' notice to the Commission and after a hearing, and if . . . the order . . . of the Commission is suspended, the order suspending the same shall contain a specific finding based upon evidence submitted to the Court, and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner and specifying the nature of the damage . . ."

Section 76. "Any public utility . . . which violates or fails to . . . obey, observe or comply with any order . . . of the Commission . . . shall, upon conviction, be punished by a fine of not less than $500.00 nor more than $2000.00 for each and every offense."

It must be remembered that the judgment herein was for loss of revenues during a period of time in which both parties were operating by authority of a certificate issued by the Commission and by authority of the order of the Circuit Court staying the Commission order to revoke defendant's certificate and refusing to stay the Commission's order granting plaintiff's certificate. The Act clearly contemplates that the carrier will abide by the order of the Commission until and unless the Court stays the effect of the same on appeal.

■■ The doctrine of restitution, both as to origin and function, is equitable in nature. In Restatement of the Law, Restitution, Sec. 74, the rule is stated thus:

"A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution

would be inequitable or the parties contract that payment is to be final; . . ."

In explaining the meaning of this statement, at page 305 the Restatement states:

"On the other hand, an independent action for restitution is equitable in nature and in such an action as in summary proceedings, the court can act in the protection of the interests of both parties in special situations in which this is desirable."

In elaborating on the doctrine the court in Atlantic Coast Line R. Co. v. State of Florida, 295 U. S. 301, 55 S. Ct. 713, 79 L. Ed. 1451, said:

"Decisions of this Court have given recognition to the rule as one of general application that what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a reversal, by the litigants opposed to him, the beneficiaries of the error . . . But the rule, even though general in its application, is not without exceptions. A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function (citing cases). The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it (citing cases). The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it . . .

"Suits for restitution upon the reversal of a judgment have been subjected to the empire of that principle like suits for restitution generally. 'Restitution is not of mere right. It is ex gratia, resting in the exercise of a sound discretion, and the Court will not order it where the justice of the case does not call for it, nor

174

where the process is set aside for a mere slip' . . . 'In such cases the simple but comprehensive question is whether the circumstances are such that equitably the defendant should restore to the plaintiff what he has received.' "

From the foregoing it would appear that, restitution being equitable in nature, the doctrine should not be applied where it would be inequitable to do so.

A comparable question arose in Mandel Bros., Inc. v. Chicago Tunnel Terminal Company, 2 Ill.2d 205, 117 N.E.2d 774. In that case defendant had been granted an increase in rates by the Commission and plaintiff appealed to the Circuit Court *but did not request the Court to stay the Commission's order.* That order was reversed and no further appeal taken. Plaintiff then filed a complaint before the Commission to recover the alleged overcharge. The Commission denied the claim for restitution. On appeal to the Circuit Court, a part of the claim for restitution was allowed and a part denied. Both plaintiff and defendant appealed. The Supreme Court reversed the Circuit Court and affirmed the Commission. The Court pointed out that the rate was by law set by the Commission and that defendant was compelled to charge that rate under severe penalty of law if it failed to do so. The court stated:

"Section 71 of the act, which governs judicial review of orders of the commission deals specifically with the question of the rate to be charged during the pendency of an appeal. It provides, 'The pendency of an appeal shall not of itself stay or suspend the operation of the . . . order . . . of the Commission, but during the pendency of such appeal the circuit or superior court, or the Supreme Court, as the case may be, in its discretion may stay or suspend, in whole or in part, the operation of the Commission's . . . order . . . .' The operation of the rate approved by the commission

175

was not stayed by the circuit court, and Mandels did not request that it be stayed.

"It follows that the rate approved by the Commerce Commission as just and reasonable was the rate which the utility was required to charge so long as the order of the commission remained in effect. It cannot therefore be said that in charging that rate the utility charged an excessive rate which gave rise to a claim for reparations."

The case of Atlantic Coast Line R. Co. v. State of Florida, supra, is also enlightening on the question here involved. In that case the railroad had established certain freight rates. Subsequently, after a hearing, these rates were found to be noncompensatory and on February 7, 1929, the Commission increased the freight rates. A review was sought in the District Court which dismissed the bills of complaint thereby sustaining the Commission order. Subsequently on March 7, 1931, the U. S. Supreme Court set aside the Commission's order on the ground that it did not contain the necessary findings. In the period between February 7, 1929, and March 7, 1931, the railroad collected the rates as fixed by the Commission's order. Upon reversal by the U. S. Supreme Court, the shippers sought to recover the difference between the rate in effect prior to February 7 and the rate in effect after February 7. In holding that it would be inequitable to compel the railroad to make restitution of what it had received in the light of the legal requirement that the railroad was compelled to exact the increased rate so long as the order of the Commission stood unreversed under pain of criminal prosecution, the court said:

"The carrier was not at liberty to take the law into its own hands and refuse submission to the order without the sanction of a court. It would have exposed itself to suits and penalties, both criminal and civil, if

it had followed such a path. . . . Obedience was owing while the order was in force."

An analogous situation presents itself in the case at bar. Section 49-a prohibited plaintiff from discontinuing service while its certificate was in effect. Thus plaintiff, once its certificate of convenience and necessity was ordered, had to provide the service covered by the certificate. It had no choice and obedience was owing while the order was in force. By section 67 a petition for rehearing would not excuse compliance and by section 71 an appeal, absent a stay order, would not suspend operation of the order of the Commission or excuse compliance. And section 76 would have exposed plaintiff to severe penalties had it refused to comply, aside from the possibility of being forced to comply by legal action. There is the additional factor which in our opinion makes the present case stronger than the foregoing rate cases in its lack of equitable appeal, namely, that to apply the doctrine of restitution in this case would require us to assume that all of the revenues plaintiff received would have gone to defendant had plaintiff not continued to operate. The record does not warrant any such assumption.

We are therefore of the opinion that the trial court was in error in entering judgment for defendant on its counterclaim. Accordingly the judgment of the Circuit Court of DeWitt County will be reversed.

Reversed.

REYNOLDS, P. J. and CARROLL, J., concur.