**Lawrence NORMAN and Elisabeth Norman, Plaintiffs,**

v.

**R. L. McKEE et al., Defendants.**

**No. 45079.**

United States District Court
N. D. California.

July 29, 1968.

Harold S. Kant, Beverly Hills, Cal. (Kant & Gordon, Beverly Hills, Cal., on the brief), and Abraham L. Pomerantz and Richard M. Meyer, New York City (Pomerantz, Levy, Haudek & Block, New York City, on the brief), for plaintiffs.

Moses Lasky and Charles B. Cohler, San Francisco, Cal. (Brobeck, Phleger & Harrison, San Francisco, Cal., on the brief), for defendants Insurance & Securities Incorporated, R. L. McKee, E. R. Foley and Elwood Murphey.

Paul A. Renne, San Francisco, Cal. (Cooley, Crowley, Gaither, Godward,

Castro & Huddleson, San Francisco, Cal.), for defendants Pacific National Bank of San Francisco, California, W. H. Draper, Jr., and Waldo W. Weeth.

Alma M. Myers, Berkeley, Cal., for objectors Alma M. Myers and Myrtle G. Cromwell, as executrices of the will of Ethel I. Bumbaugh, deceased.

LeRoy W. Rice, San Francisco, Cal., on behalf of objector Paul E. Geerlings and Donald M. Feuerstein, Special Counsel, Securities and Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Solomon Freedman, Director, Division of Corporate Regulation, and Robert C. Hacker, Atty., Division of Corporate Regulation, Securities and Exchange Commission, Washington, D. C., on the brief), for amicus curiae Securities and Exchange Commission.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This suit was commenced on May 9, 1966, by the named plaintiffs, Lawrence Norman and Elisabeth Norman, his wife, as investors since 1963 in Insurance Securities Trust Fund against the Fund (which has approximately 175,000 investors); its directors and officers, its Trustee, Pacific National Bank, and its underwriter and manager, Insurance Securities Incorporated (hereinafter referred to as ISI) derivatively on behalf of the Fund and representatively on behalf of all other investors. Jurisdiction of this Court is invoked under the Investment Company Act of 1940 (15 U.S. C. § 80a–1 et seq).

The complaint alleges in substance and effect that the defendants, acting *in violation of the Act, improperly* charged the Fund (a) with brokerage commissions totaling $3,772,000 during the fiscal years ending June 30, 1962, 1963, 1964 and 1965; (b) with advisory fees amounting to $5,369,282 during the fiscal year ended June 30, 1965; and (c) with net creation fees amounting to $11,539,666 during the same period.

The complaint prays that the defendants be required to account for and restore to the Fund these alleged improper charges, totaling in all over 20 million dollars, and further that defendants be required to pay plaintiffs their costs of suit including reasonable attorneys' fees.

The case comes before the court at this time pursuant to a previous order made under Rules 23(a) and 23.1 Fed. R.Civ.P., and dated and filed herein February 21, 1968, requiring all investors in the Fund, as members of the represented class, to show cause on April 3, 1968, why a certain Stipulation and Settlement and Compromise entered into between the named plaintiffs and the defendants and filed and dated herein February 21, 1968, should not be approved by the court and a judgment entered herein accordingly and binding on all members of the represented class who have not noticed their exclusion as permitted in Rule 23.

The matter came on regularly for hearing on April 3, 1968, at which time certain of the represented class appeared to oppose approval of the settlement, among whom were Alma Myers and Myrtle G. Cromwell, as executrices of the Last Will of Ethel I. Baumbaugh, deceased, a member of the represented class until her death on March 29, 1967. Further hearings were held on April 4th, April 30th, May 24th and the matter was submitted for decision as of June 7, 1968.

During the hearings affidavits of the parties to the action and of appearing members of the class were received, some oral testimony taken and argument was heard. Further, on April 8, 1968, the court, acting on its own motion, requested the Securities and Exchange Commission to appear as amicus curiae. The Commission did so appear through its General, Associate and Special Counsel, by Memorandum filed herein on May 22, 1968.

All parties to the suit and appearing members of the class were given full opportunity to respond to said SEC

Memorandum by oral argument, written briefs and further affidavits, the responding briefs of the named plaintiffs herein and of the defendants herein being filed herein as of May 22nd and May 21st, respectively.

■ The court agrees with the named plaintiffs and the defendants to the extent of their argument that the court should not lightly disapprove a compromise of litigation.

However, settlement of a derivative and representative suit affects, not only the rights of those actually before the court, but also the rights of many persons not present to speak for themselves. Rules 23(a) and 23.1 place the court in the role of a third party to the compromise or guardian of the absent parties and of the corporate fund as a whole. The absence or silence of investors does not relieve the judge of his duty and, in fact, adds to his responsibility.

■ The burden is on the proponents of the settlement to show that the settlement is fair and reasonable, having in mind the likely results of the litigation as compared with the consideration received for not going forward with it.

■ Although compromise, generally speaking, is to be encouraged, and the practical judgment of the named parties advised by competent counsel is entitled to considerable weight, and although the court should not simply substitute its practical judgment for that of the parties, the court, nevertheless, should not approve a settlement which appears on its face to be so inadequate and, therefore, so unfair to the corporate fund or represented class as not to merit judicial approval. With this in mind we examine the various aspects of the proposed settlement.

## THE BROKERAGE FEE ISSUE

The proposed stipulated settlement provides that ISI will restore to the Fund amounts charged by it as brokerage commissions from and after July 1, 1967, so far as those charges exceed ISI's own costs of performing brokerage service —an amount stipulated to be $618,286.-72—and, further, that hereafter ISI will itself perform all services in connection with the sale or purchase of portfolio for the account of the Fund at a charge no greater than ISI's own costs of performing such service—such costs to be determined according to a prescribed formula—and, further, that this arrangement will remain in effect for a period of ten years.

It will be noted that under the proposed settlement no part of the brokerage fees charged against the Fund by ISI prior to July 1, 1967 is to be restored to the Fund.

According to the record (see SEC Order of 1/11/68, p. 7, as appended to the Stipulation for Settlement and Compromise filed 2/21/68) brokerage commissions charged by ISI against the Fund amounted to more than six million dollars during the fiscal years 1959–1967. Plaintiffs' complaint, filed May 9, 1966, alleged the amount to be $3,-772,000 during the fiscal years 1962, 1963, 1964 and 1965, apparently upon the theory that recovery would have to be limited by the four year statute of limitations. Adding brokerage fees charged after the filing of suit, the total would be over five million dollars.

Assuming the propriety of offsetting against this amount in favor of ISI its actual costs of performing brokerage services,[1] the recoverable amount of "profit" on the brokerage fees would still be not less than $2,771,307, according to counsel for the named plaintiffs (see Plaintiffs' Brief of 5/22/68, p. 15) and $1,750,000, according to defendants (see Defendants' Brief of 5/21/68, p. 15).

Counsel for the named plaintiffs express the belief (Plaintiffs' Brief of

---

1. The propriety of allowing any such offset in favor of ISI is debatable. The Division of Corporate Regulation and Trading and Markets of the SEC took the view that ISI was not justified in charging the Fund a brokerage fee in addition to its regular management fee. (See SEC Order of 1/11/68, p. 8).

5/22/68, p. 10) that giving up of claims for restoration of $2,800,000, past "profit" made by ISI on over five million dollars of brokerage commissions charged against the Fund during the limitations period prior to July 1, 1967, is justified by the fact that the settlement, which obligates ISI to refrain for 10 years from charging the Fund for brokerage services (beyond its actual costs) will eventually benefit the Fund to the extent of an estimated ten million a year, i. e., one million a year over a future 10 year period.

The difficulty with this argument is that the Securities Exchange Commission, as early as August 5, 1964, nearly two years before the commencement of this suit, had issued a formal order directing its staff to investigate the ISI practice of charging the Fund with brokerage commissions and had followed through on March 6, 1967, with a private administrative proceeding against ISI to determine whether the charging of these commissions violated the anti-fraud provisions of the Securities Acts or the Investment Advisory Act of 1940. This latter proceeding eventually resulted in the SEC Order of 1/11/68 already mentioned herein.

That Order sets forth a stipulation (pp. 2–7) of the facts concerning brokerage commissions charged to the Fund by ISI between 1959 and 1967; also a statement of the reasons (p. 8) for the SEC Division of Corporate Regulation and Trading and Markets determination that it was unjustifiable for ISI to charge the Trust Fund brokerage commissions in addition to the so-called management fee provided in the basic Trust Agreement.

The Order then recites that, although ISI denies any violation of the federal securities laws, it has offered to discontinue, retroactively to July 1, 1967, charging any amounts in excess of its actual administrative cost of the broker-age services performed for the Fund and has consented to the entry of a cease and desist order to that effect—provided the SEC will refrain from making any findings as to whether its past practices violated the federal securities laws.

The Order then recites that the Commission accepts this offer, despite this limitation,[2] "in view of the unique circumstances of this particular situation and the benefits which will result to the shareholders of the Fund from a prompt disposition of the matter", it being understood, however, that the Commission's acceptance of the ISI offer "in no sense implies that we are persuaded that the activities engaged in, as set forth in the stipulation of facts, did not violate the federal securities laws or that we in any way condone them."

The SEC Order became effective as of January 11, 1968, more than a month before the signing of the proposed settlement of this suit, and will continue in effect retroactively from July 11, 1967 and indefinitely for the future even if the proposed settlement of this suit is disapproved.

It is clear, therefore, that the proposed settlement of this suit on terms of estimated *future* saving to the Fund (retroactive only to July 1, 1967) does not confer any significant benefit on the Fund, its present investors or those who were investors at the time of the alleged violations that has not already been conferred by the SEC cease and desist order.

We are not impressed with the attempt of counsel or the named plaintiffs to present the in futuro terms of the proposed settlement of this suit as better than the SEC Order. In fact, it would seem that in certain respects the SEC Order is better because (1) it continues indefinitely while the proposed settlement is limited to 10 years, and (2)

---

2. One of the five members of the Commission dissented on the ground that the Commission should not preclude itself from making findings concerning legal violations.

it places an absolute limit on the amount of brokerage costs chargeable by ISI to $350,000 in the years 1968, 1969 and 1970.

Admittedly, the proposed settlement—except for $618,285 ISI profits in brokerage commissions charged since July 1, 1967—waives plaintiffs' claim for restoration of any part of the five million dollar brokerage fees charged against the Fund during the 4 year period prior to commencement of this suit and thereafter through 1967.

Just why under these circumstances the named plaintiffs have joined in a presentation to the court of the proposed settlement is not clear.

Counsel for the named plaintiffs do not suggest any weakness in the legal or factual basis for their claim for restoration of the brokerage fees. On the contrary, they say in their Brief of 5/22/68, p. 9: "Contrary to Mr. Lasky we have always regarded the brokerage claims as a very good cause of action with an excellent prospect of recovery".

It appears from the record that before, on and after the date of the SEC Order, the named plaintiffs were just as free to act appropriately for the benefit of the Fund and the class they claim to represent as was ISI free to settle the SEC proceeding against it on terms considered to be in its own interest.

## THE MANAGEMENT FEE ISSUE

For its services, including administration, management and investment advice, ISI charges a so-called "Management Fee" of 1½% per year of the face amount of each outstanding investment certificate.

The complaint alleges that ISI, acting in violation of the Act, received management fees of $5,369,282 from the Fund in the fiscal year ended June 30, 1965 and continues to receive such and, further, alleges that such fees were excessive. The complaint prays recovery of the excessive management fees.

The proposed settlement provides that ISI will attempt to effect an amendment providing a new management fee schedule which will be applicable for 10 years after any such amendment. Such new schedule will be applicable, however, only to new investment certificates sold after the amendment. The new schedule will be such that, if it had been applicable to all certificates outstanding in 1967, the management fees of ISI during that year would have been at least $700,000 less than those actually received.

Plaintiffs predict that this new schedule will reduce management fees, as compared to present management fees, by about $3,500,000 over the 10 year period.

It will be noted, however, that since the new schedule will be applicable only to investment certificates sold in the future, there will be no change, nor any saving, with respect to management fees chargeable to investment certificates now outstanding—whether they were held during the period of alleged excessive management fee charges or not. Thus, a new schedule can benefit only such of the general public as might invest in the future, or perhaps, some present investor who might purchase an additional new certificate in the future.

As a matter of fact, the proposed settlement provision for a new schedule is broad enough to permit a schedule on a net asset value basis (as distinguished from the present contract-price basis) under which even new investors in the future could be no better off as far as the management fee is concerned, than under the fee schedule applicable to all investors in the past.

Here again the proposed settlement waives plaintiffs' claim to the alleged $5,369,282 collected by ISI during the fiscal year 1965 and management fees thereafter collected by ISI.

## CREATION FEE ISSUE

ISI charges and deducts from all payments on the sale of a new certificate a so-called creation fee of 8.85%. Similarly it charges and deducts this creation

fee on the reinvestment of the proceeds of a matured certificate in a new certificate.

The complaint alleges that ISI received, in violation of the Act, $11,539,666 in creation fees during the fiscal year ended June 30, 1965, and continues to receive them. The complaint also alleges that these fees were excessive and prays for restoration of the excessive fees.

First, with respect to creation fees on *re*investment the proposed settlement merely provides that ISI will not for 10 years increase reinvestment creation fees beyond the rates fixed by certain agreements made by ISI under which ISI waived creation fees for some reinvestments and reduced the fee to 5% on others. Further, on August 12, 1967, SEC adopted a Rule 11a–1 (17 CFR 270.11a–1) which now prohibits creation fees on reinvestment of the proceeds of matured certificates. It appears, therefore, that the proposed settlement, so far as *re*investment creation fees are concerned, does not provide any observable benefit for the Fund or its investors —past, present or future.

As to creation fees on *new* investments, the proposed settlement in effect reduces for 10 years the creation fee charge from 8.85% to 8.5%. Plaintiffs predict a saving, as compared with such charges in the past, of 5 million dollars over the 10 year period.

This saving, however, will not benefit the Trust Fund (which does not, itself, pay the creation fee) or existing investors—whether they became such during the period of alleged excessive creation fees on new investments or not. The savings will inure to the benefit only of such of the general public as might make new or additional investments in ISI.

PAST INVESTORS

SEC argues that, when fees, including the brokerage fees here in issue, have been illegally collected over a long period from a mutual fund having the characteristics of the Fund here involved, those who were investors at the time the illegal fees, including the brokerage fees, were collected, but who have since disposed of their investment, have a right, recognizable in equity, to share in any recovery as well as the Fund itself, or investors at the time of the restoration or those who become investors thereafter.

SEC points out that the creation fees were collected by ISI from each investor by deducting the percentage from payments made on his investment. Thus, the creation fees were in the nature of commissions paid to ISI by the individual investors and any claim of illegality of such commissions would be the investors' direct personal claim rather than a claim of the Fund itself.

Similarly, SEC points out that although the management fees were charged against the Fund's income or assets, they were separately computed on the basis of each investor's agreement and the amount deducted therefrom. Accordingly, it appears, therefore, that the claim for illegally charged management fees could also be treated as a claim of the investors rather than a claim of the Fund.

As to the brokerage commissions collected by ISI, the SEC recognizes that these fees were charged against the assets of the Fund rather than against the accounts of the individual investors. It argues, however, that in view of the unique nature of the Fund here involved and the certificates therein, investors who were such at the time the brokerage fees were collected by ISI are entitled, nevertheless, to participate in any restoration thereof. Counsel for the named plaintiffs contend that the claim for brokerage fees is derivative on behalf of the Fund and that there is no legal requirement that the settlement should benefit past investors.

If the SEC is correct, the proposed settlement, waiving as it does substantially all of the claim for past allegedly improper charges, certainly provides no significant recovery which could be specifically allocated to investors who were such during the period of the

charges but who meanwhile disposed of their interests.

 However, we do not think it is necessary to pass upon this question of class participation at this time. Whatever the legal or equitable rights of former investors, it is certainly proper in connection with an appraisal of the adequacy and fairness of the proposed settlement to consider, not only the Fund, but also its investors who were such during the alleged improper charges and still continue to be such and, of course, all other present investors as well as future investors.

## ATTORNEYS' FEES

It will be noted that, although the named plaintiffs in their complaint prayed for a court award of costs including counsel fees, they have now presented a proposed settlement providing that ISI will directly pay a stipulated fee of $250,000 to counsel for named plaintiffs, one half on effective date of the settlement and the remainder within a year thereafter.

In the opinion of the court this is not a good practice because in some cases it could be a factor making for a premature or inadequate settlement of a derivative or class action, especially where, as in this case, the named plaintiff, Lawrence Norman, himself an attorney associated with his present local record counsel, frankly admits that he expects to share in the $250,000 fee. Any proposed settlement should be presented in terms of the gross consideration to the Fund or class and the matter of attorneys' fees left for judicial determination and award.

Upon a consideration of the whole record, this court agrees with the conclusions reached by SEC to the effect that for the reasons set forth above, the proposed settlement is so inadequate, and, therefore, so unfair that it should not receive judicial approval.

It is therefore ordered that the proposed settlement, as now presented, be disapproved.