MARILYN GOWDEY *et al.*, Plaintiffs-Appellees, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.—(WILLARD BLAIR *et al.*, Separate Objectors-Appellants.)

First District (5th Division)   No. 60272

Opinion filed March 12, 1976.—Rehearing denied April 22, 1976.

Paul E. Hamer, of Northbrook, for appellants.

Mural J. Winstin and Patrick C. O'Day, both of Chicago, for appellant Willard Blair.

Paul M. Lurie, Robert A. Holstein, and Burton I. Weinstein, all of Chicago, for appellees Marilyn Gowdey, *et al.*

C. Richard Johnson and James N. Nowacki, both of Chicago (Isham, Lincoln & Beale, of counsel), for appellee Commonwealth Edison Co.

Francis J. Reilly, of Chicago, for appellee Herman Edwards.

Leo A. Segall and Eugene I. Pavalon, both of Asher, Greenfield, Goodstein, Pavalon and Segal, Ltd., and Leonard E. Handmacher, both of Chicago, for appellees Robert Simpson and Judith Losey Clemmons.

Joseph V. Roddy, of Chicago, for appellees former customers.

Harry A. Young, Jr., *pro se.*

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by separate objectors Blair and Hamer from a final order of the circuit court approving the settlement of an action originally brought against Commonwealth Edison Co. (Edison) by plaintiff Gowdey as an individual on her own behalf and on behalf of all other persons who were or had been charged by Edison for its residential light bulb service (hereinafter called plaintiffs).

It appears that for more than 50 years Edison has maintained a bulb service for its residential customers. This practice was initially allowed by the Illinois Commerce Commission (Commission) because of a shortage at that time of adequate quality bulbs on the open market. Edison was permitted to impose a mandatory charge for this service until 1932 when the Illinois Supreme Court, in *Consumers Sanitary Coffee & Butter Stores v. Commerce Commission ex rel. Commonwealth Edison Co.*, 348 Ill. 615, 181 N.E. 411, ruled that Edison must provide the bulb service on an optional basis. Thereafter, apparently in response to the supreme court

ruling, the Commission approved a tariff for the light bulb service which set a charge for the service and made it optional. The form was as follows:

> "Light bulb service—The above charges include 0.17 cents per kilowatt hour for the first 100 kilowatt hours supplied in the month for light bulb service as described in Rider 10. Light bulb service is optional with the customer. Where the customer elects not to take light bulb service, such charges for the first 100 kilowatt hours shall be reduced by 0.17 cents per kilowatt hour."

In plaintiffs' complaint it was alleged that Edison (1) unlawfully used a "negative option" by which the bulb service was included in a customer's bill unless it was otherwise specifically requested; (2) failed to disclose in its bills to residential customers that a charge for a light bulb service was included or that the service was optional; (3) deceived its customers through the use of information, materials and rate cards which were phrased in a manner intended or likely to lead customers to believe the service was free and not optional; and (4) through its marketing scheme, wrongfully charged plaintiffs for the bulb service even though they had never agreed to the purchase or to be charged therefor. Plaintiffs sought extensive injunctive relief as well as a repayment to plaintiffs of all the alleged wrongful charges.

Edison responded by moving to dismiss the complaint on the grounds that primary jurisdiction lay with the Illinois Commerce Commission. Edison contended that the controversy concerned its rates and tariffs which, by Illinois law, are governed exclusively by the Commission—the circuit court having jurisdiction only by way of administrative review. The court denied the motion, holding that it had jurisdiction.[1] Thereafter, in its answer and in a motion for summary judgment, Edison raised a wide variety of other defenses. It denied that the customer information materials were misleading, deceptive or fraudulent. As an affirmative defense, it contended that it had at all times carefully followed all relevant Commission orders. By exhibits filed with the pleadings, it established that new customers had received a principal rate card with their first bill and periodically thereafter which, it contended, clearly disclosed the charges for and the optional nature of the bulb service. This card, which closely followed the wording of the tariff, stated:

> "Light Bulb Service: Optional with the Customer under Rates 1, 6 and 14. Under Rates 1 and 14 (the residential service rates), if the Customer does not take light bulb service, the charges for the first 100 kwhrs. in any month are reduced 17/100ths of a cent per kwhr.
> *   *   *." (Parenthesis added.)

---

[1] Edison's motion to dismiss was allowed as to Count 2 of plaintiffs' complaint, which alleged a claim under the Illinois Deceptive Trade Practice Act (Ill. Rev. Stat. 1973, ch. 121½, pars. 311-317).

Edison further asserted in its pleadings that (1) no damages could be awarded since the form of option which was allegedly used had been approved by the Commission[2]; (2) the so-called negative option was not inherently unlawful because where, as here, the form of option had been expressly approved by the Commission, it was lawful; and (3) the allegation that the plaintiffs had never agreed to purchase the bulb service or to be charged for it was false. Edison also opposed the assertion of the claim on behalf of a class, especially with regard to the claims for damages. It alleged that the issues of fact which were not common to the class predominated over the issues of fact which were. It suggested that some of the critical questions of fact at issue were (1) whether individual class members had knowledge of the availability of and charges for light bulb service; (2) whether individual class members in fact used bulbs under the service; (3) what information concerning the bulb service had been received by individual customers; and (4) what oral or written communications occurred between individual customers and Edison regarding the service. Edison contended that all of these factual questions would have to be resolved individually to determine claims of liability or any possible damages. Because of the importance of these individual issues of fact, it asserted that there was a substantial doubt as to the manageability of a class action. As a defense, it also contended that the statute of limitations barred all claims for damage incurred prior to one year before the filing of the suit.

The relevant facts in the case were extensively presented to the trial court. Considerable data pertaining to the income from and the costs of light bulb service was submitted by Edison at the court's request. Other factual matters were presented by Edison's affidavits in support of its motion for summary judgment. Still more facts were presented to the court through the discovery efforts of the parties. Outside experts employed by plaintiffs reviewed and reported on Edison's record keeping procedures.

After various cross-motions for summary judgment had been briefed but before they were ruled upon, plaintiffs and Edison began, under the supervision of the court, extensive settlement discussions. Those negotiations, which began in the spring of 1972, broke off on several occasions, and during these interruptions, the parties went forward with trial preparation. Finally, in February, 1973, terms of a preliminary settlement agreement were reached.

Upon receiving the proposed settlement, the trial court appointed a number of special officers to review its fairness and reasonableness from a

---

[2] Illinois law does not allow damages with regard to utility charges where the utility has followed Illinois Commerce Commission approved tariffs. See, *e.g., Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.,* 2 Ill. 2d 205, 209-12, 117 N.E.2d 774, and *Illini Coach Co. v. Illinois Highway Transportation Co.,* 25 Ill. App. 2d 168, 174-77, 166 N.E.2d 161.

number of viewpoints. A claims trustee and an attorney for that trustee were appointed to monitor any claim procedures for the court and to review the fairness of the settlement generally. A separate trustee was appointed to advise the court with regard to the claims of former light bulb customers. A guardian ad litem for incompetents and possible minor class members was also appointed.

These officers were given access to all discovery materials, as well as all memoranda and other papers filed in the case. The trustees also interviewed certain witnesses. In addition, substantial additional factual investigations were pursued by the court appointed officers, and lengthy memoranda were then prepared by them analyzing the proposed settlement and making suggestions for revision. Finally, agreement was reached by all parties and these officers to a proposed settlement which provided in summary as follows: (1) During the 12-month period immediately following the date of judgment, Edison must resolicit all of its 2,400,000 residential customers, so that each customer might affirmatively elect whether he wished to continue to subscribe to the light bulb service; (2) any residential customer affirmatively electing not to subscribe to the light bulb service would be discontinued as such and his monthly utility charge reduced accordingly; (3) any residential customer not responding in any fashion to the resolicitation would be presumed not to wish to continue the light bulb service, dropped as a light bulb service subscriber, and his monthly utility charge reduced accordingly; (4) all new residential customers must affirmatively elect to subscribe to the light bulb service before being charged for it; (5) all Edison bills to residential customers using the service must separately state the light bulb charge; (6) for one year following the date of judgment, Edison would not request of the Illinois Commerce Commission an increase in the light bulb service charge; (7) for a three-year period following the date of judgment, Edison must continue the light bulb service whether or not it proved profitable; (8) residential customers still residing in Edison's service area willing to state in writing that they did not wish to subscribe to and have never utilized the light bulb service, upon submission of a simple form so stating, might receive without charge 18 light bulbs from any distribution center; (9) former residential customers who no longer resided in Edison's service area and who never utilized the light bulb service, upon submission of a simple form so stating, would have shipped to them, at Edison's expense, 18 light bulbs; (10) former residential customers who never used the light bulb service and who no longer supplied their own light bulbs, such as those living in nursing homes, would receive a $6 cash refund in lieu of bulbs; (11) any class member not wishing to be bound by the judgment could elect to be excluded therefrom prior to October 26,

1973; (12) Edison would pay the reasonable attorneys' fees of the plaintiffs' attorneys and costs.[3]

Following a preliminary approval of its terms, the trial court directed that a copy of a notice of the proposed settlement be mailed to every present residential electric service customer of Edison being charged for light bulb service. That notice was also published in the major local newspapers. It described the case, the terms of the settlement, and gave all class members an opportunity to appear at a hearing to object to the proposed settlement. In addition, it provided that any persons who wished to exclude themselves from the settlement in order to pursue their own claims separately would be given the right to do so.

In response to the 2,400,000 mailed notices, only five persons filed objections. Among these were Willard Blair and June T. Hamer. The latter appeared on her own behalf and on behalf of an alleged excluded class consisting of those customers who occasionally used the service and those who, by electing to continue in the service, would not allegedly participate in the settlement. In addition, correspondence was received by the circuit court from two persons expressing their belief that settlement was inadequate but who did not appear to object.

All objectors were allowed by the court to present their objections orally or in writing and to present any evidence they wished. The trial court granted a motion filed by two of the objectors, a present and a former customer who are not appellants here, to intervene as plaintiffs. Upon the suggestion of those intervenors and the court, the parties agreed to increase the number of bulbs available in the claims procedure from 16 to 18 and the amount of the alternative cash payment from $5 to $6. Those intervenors then withdrew their objections to the settlement.

After receiving memoranda from objectors Blair and Hamer, appointed court officers, and the parties, an order was entered approving the proposed settlement and denying the remaining objections. Blair and Hamer were then given an additional opportunity to exclude themselves from the class and to pursue their individual claims separately, but they chose not to do so. Judgment was then entered approving the settlement, from which order Blair and Hamer alone appeal.

Initially, they raise the question of the jurisdiction of the circuit court to approve the settlement. The plaintiffs, Edison, and the court appointed officers—seeking to uphold the court's order—contend that (1) the objectors have no standing to challenge the settlement; (2) the question of subject matter jurisdiction was one of the matters controverted and resolved in reaching the settlement and therefore not properly before this court; and (3) in any event, the trial court did have such jurisdiction.

---

[3] These fees and costs have not as yet been determined.

■■ In Federal actions, it is a general rule that any member of a class who appears in response to a court's notice of settlement and objects to the dismissal or compromise of the action has a right to appeal from an adverse final judgment although he did not become a formal party of record. (*Cohen v. Young* (6th Cir. 1942), 127 F. 2d 721; see generally Illinois Institute for Continuing Legal Education, Class Actions, ch. 6, §6.41 (1974).) We believe the Illinois rule to be the same. Former section 74(1) of the Civil Practice Act, which stated "[t]he right heretofore possessed by any persons not a party to the record to review a judgment or decree by writ of error is preserved by notice of appeal," was incorporated into and replaced by Supreme Court Rule 301 (Ill. Rev. Stat. 1967, ch. 110A, par. 301), which provided then and now that "[a]ll rights that could have been asserted by appeal or writ of error may be asserted by appeal." Concerning the use of writs of error, the court in *Upper Lakes Shipping Ltd. v. Seafarers' International Union*, 40 Ill. App. 2d 392, 189 N.E.2d 753, states at page 401:

> "Prior to the enactment of the Civil Practice Act one who was not a party to an action had no statutory right of appeal. He could, however, prosecute a writ of error if he showed that he was a privy to the record, or would be injured by the judgment order or decree which he sought to have reviewed, or if he showed that he would benefit from its reversal or if he was competent to release errors."

In light of the foregoing, we hold that the objectors Blair and Hamer have standing to bring this appeal.

■■ It is next suggested, by Edison, that it is unnecessary for us to decide the question of the trial court's jurisdiction inasmuch as this was an issue which the parties elected to settle. In support thereof, it cites the following language from *Schleiff v. Chesapeake & Ohio Ry. Co.* (S.D.N.Y. 1967), 43 F.R.D. 175, 178:

> "In determining whether to approve the compromise or not, the Court does not try out the disputed issues. The compromise was agreed to for the purpose of avoiding just that."

Our examination of *Schleiff* and its supportive citations, however, indicate that the fundamental question of the court's subject matter jurisdiction was never at issue. It appears to us that the rules are well settled that subject matter jurisdiction is beyond the power of litigants to confer (*People v. Industrial Savings Bank*, 275 Ill. 139, 113 N.E. 937; *Rensing v. Turner Aviation Corp.* (N.D. Ill. 1958), 166 F. Supp. 790), and that where there is no such jurisdiction the judgment is void (*Atkins v. Atkins*, 393 Ill. 202, 65 N.E.2d 801). Since the parties here could not, by consent, confer subject matter jurisdiction, it necessarily follows that counsel's agreement to compromise is not determinative of that issue. The settlement order ne-

cessarily depends for its validity upon the court's subject matter jurisdiction. *Atkins.*

■■ Plaintiff Gowdey argues that in fact the trial court did have subject matter jurisdiction and, in any event, she suggests that the doctrine of "prior resort" to available administrative remedies applies. This doctrine would give a court the right, after a suit is initiated, to refer the initial proceeding to an administrative agency in certain circumstances. Professor Cooper's treatise on State Administrative Law (1965), volume II, is cited at page 566 for the proposition that:

> "[T]he doctrine of prior resort (and as well the twin requirement of exhausting administrative remedies) does not go to the jurisdiction of the courts, but solely to the question whether the matter is ripe, *as a matter of policy*, for judicial determination."

It appears, however, that the proposition asserted is merely a summary of the New Jersey Supreme Court's decision in *Nolan v. Fitzpatrick* (1952), 9 N.J. 477, 89 A.2d 13, and that even the author states that it is followed only in Florida, Maryland, New Jersey and New York. (*Cooper*, at 565.)[4] Our research indicates that in Illinois relief for utility reparations lies exclusively with the Illinois Commerce Commission under section 72 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 76).[5] (*Cummings v. Commonwealth Edison Co.*, 64 Ill. App. 2d 320, 213 N.E.2d 18; *Alton Brick Co. v. Alton Water Co.*, 42 Ill. App. 2d 451, 192 N.E.2d 599; *American Generator & Armature Co. v. Commonwealth Edison Co.*, 298 Ill. App. 192, 18 N.E.2d 735.) Thus, the rule has developed that only the Commission has jurisdiction over complaints of excessive rates charged by public utilities, and courts have jurisdiction over these matters only on administrative review, *i.e.*, only after prior resort to the Commission and the exhaustion of remedies available there. (*Cummings; Adler v. Northern Illinois Gas Co.*, 57 Ill. App. 2d 210, 206 N.E. 2d 816.) Thus, if plaintiffs' action was one for "reparations" within the purview of section 72, then jurisdiction was exclusively with the Commission, which would preclude relief before the circuit court. (*Malloy v. Illinois Bell Telephone Co.*, 12 Ill. App. 3d 483, 299 N.E.2d 517.) However, plaintiffs, Edison, and the court appointed officers all urge that this action was not for reparations but rather was for damages and was authorized by section 73 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 77), which Provides:

---

[4] There is some question whether the doctrine of "prior resort" or "primary jurisdiction" is in fact jurisdictional. Several recent Federal cases state the issue as one of judicial self-restraint and not one of jurisdiction. See *Interstate Commerce Com. v. All-American, Inc.* (7th Cir. 1974), 505 F.2d 1360, 1362, and *Weidberg v. American Airlines, Inc.* (N.D. Ill. 1972), 336 F. Supp. 407, 409.

[5] Section 72 provides in pertinent part as follows: "When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation."

It appears to us that section 72 deals with the question of an overcharge. It provides that where the public utility has charged "an excessive or unjustly discriminatory amount" for its product, commodity or service, the Commission may order due reparations to the complainant with interest from the date of the payment "of such excessive or unjustly discriminatory amount." Here, no challenge was made by plaintiffs or the objectors to the fairness of the light bulb service charge. Indeed, they could not so argue inasmuch as the record discloses that for the approximate $.17 a month charge the customer could obtain 60 light bulbs a year. Rather, they complain that Edison wrongfully assumed its residential customers had exercised the option to purchase the service although Edison had not received any affirmative indication that this was the fact.

We note that after the supreme court held, in *Consumers Stores*, that the light bulb service should be optional, the matter was remanded to the Commission. Edison's contention there, that it was a proceeding to recover reparations for an excessive charge, was rejected—the Commission stating:

"[T]his case does not involve the question of excessive charges for such services as respondent renders as a public utility. It involves an article of merchandise which may be sold or furnished by anyone, and the Courts have held that the respondent adopted an unlawful practice in requiring its customers to pay a single rate for an electric service and lamp service."

While section 72 deals with reparations for an overcharge, section 73 deals with civil damages and states that where a public utility has done something unlawful, it should be liable "for all loss, damage or injury" resulting therefrom, and it provides that "an action to recover for such

has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount."

loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation." We believe section 72 is meant to grant the Commission, which has exclusive authority for rate making, an opportunity to first review any allegation that a rate or charge set by the Commission is excessive. In this action, no such agency expertise in rate making is necessary. The complaint is made simply that plaintiffs were charged for a service which they did not contract to purchase. We think the action here was not for a charge of "an excessive or unjustly discriminatory amount" within the meaning of section 72 which only the Commission could correct; but, instead, that it centers in the alleged failure of Edison to effectively comply with the mandate of the supreme court in *Consumers Stores* and of the Commission—that the bulb service be truly optional. Plaintiffs alleged that by reason of inadequate disclosure of the optional nature of the service, they suffered consequential damages.

■■ Thus, we believe *Malloy* is distinguishable inasmuch as there the rate itself was challenged, *i.e.*, the monthly telephone charge which had been set by the Commission. Likewise, in *Burke v. Illinois Bell Telephone Co.*, 348 Ill. App. 529, 109 N.E.2d 358, and *Cummings*, the challenges centered upon underlying factors which the Commission had originally considered in establishing rates, which factors later appeared to have been overstated, thereby resulting in an excessive charge for service. Thus, the propriety of the rate itself was challenged. Here, no such underlying circumstances are involved and no rate making considerations are involved. In view thereof, we are of the opinion that the action was not for reparations but for damages for which, under section 73 of the Act, the court had subject matter jurisdiction.

Objectors Blair and Hamer next challenge the settlement agreement, contending it is inadequate, unfair and unreasonable. Hamer also separately maintains that the settlement fails to provide for (1) that class of residential customers which had only occasionally made use of the light bulb service during the years of its availability; and (2) those customers who opted to continue the service. They both also point out that exemplary damages are permitted under section 73, and the failure to grant them is further indication that the settlement was inadequate because, in view of the fact that Edison knew or should have known of its inadequate disclosure, such damages should have been awarded.

Section 52.1 of the Civil Practice Act (Ill Rev. Stat. 1973, ch. 110, par. 52.1) requires the approval of the court before a class action may be compromised. In general, the decision to approve a settlement of such an action is left to the sound discretion of the trial court. (*West Virginia v. Chas. Pfizer & Co.* (S.D. N.Y. 1970), 314 F. Supp. 710, 740, *aff'd*, 440 F.2d 1079 (2d Cir. 1971), *cert. denied*, 404 U.S. 871, 30 L. Ed. 2d 115, 92 S. Ct. 81.) A trial court should not disapprove a settlement nor should its appro-

val be overturned on review unless, taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval. (*Percodani v. Riker-Maxson Corp.* (S.D. N.Y. 1970), 50 F.R.D. 473; *Schleiff.*) The basic consideration in determining whether a proposed settlement should be approved is whether it is adequate and reasonable. *Chas. Pfizer & Co.*; *Norman V. McKee* (N.D. Cal. 1968), 290 F. Supp. 29, *aff'd*, 431 F.2d 769 (9th Cir. 1970); *Fielding v. Allen* (S.D. N.Y. 1951), 99 F. Supp. 137; *Neuwirth v. Allen* (2d Cir. 1964), 338 F.2d 2.

■■ The question of the reasonableness of a settlement requires a consideration of all of the facts and circumstances to determine whether a result has been reached which is fair to all concerned parties. Here, notices were sent to approximately 2,400,000 customers—of which only two are objecting in this court, albeit one asserts a class representation as well; approximately 2,259,000 customers were sent resolicitation brochures, as provided in the settlement order, and of these (as of July 5, 1974)[6] 1,427,000 stated their desire to continue the service, 435,000 replied that they did not wish to continue, and approximately 397,000 had not responded; only about 12,000 claims for bulbs under the court order had been made as of July 5, 1974; and, finally, the plan provided in the order has now been in effect for almost two years. We note also our belief from the record that the settlement was reached as a result of arms length bargaining which extended over a long period of time following extensive discovery and that it provides residential customers with basic and immediate relief which benefits all members of the class. Those plaintiffs who were unaware of the service and who did not desire to continue it were informed of the charge and could recover their loss by receiving 18 light bulbs or $6. Those occasional users of the plaintiff class who were aware of the service but may have been unaware of the charge were assumed to have suffered no loss, inasmuch as they did use the service and could have made full use of it. In any event, because no records were available as to who they were or the number of bulbs they used, their damages could not be determined. Thus, for purposes of the settlement, they were properly assumed to have incurred no damages or only minimal damages. Finally, those members of the plaintiff class who had never used the bulbs or only occasionally used the bulbs and who elected to continue the light bulb service benefited by the compromise through Edison's continuance of the service. Edison was under no obligation to do so but, pursuant to the settlement, agreed to continue the bulb service for a three-year period. Thus, those members of the class could recoup any loss through their continued use of the service. It is apparent, therefore, that some benefit was afforded to all members of the class. When these benefits are weighed against the probability of success on the merits of the case and the cost

---

[6]The settlement order was entered on January 24, 1974.

and duration of the litigation were a compromise not effected, we believe the trial court properly determined that the settlement was adequate and reasonable.[7] In light thereof, the order approving the settlement is affirmed.

Affirmed.

LORENZ, P. J., and DRUCKER, J., concur.

---

[7] Because the case was settled, the trial court was not required to resolve the issue raised concerning the propriety of litigating this matter as a class action. We refer to it here only to point out that there was a substantial dispute on that question. We note, however, that other cases have held that a class action could properly be prosecuted where a defendant is alleged to have acted wrongfully in the same basic manner as to an entire class. In these circumstances, the common class questions still dominate the case, and the class action is not defeated merely because certain defenses may be urged against individual class members. See *Rosen v. Village of Downers Grove,* 19 Ill. 2d 448, 167 N.E.2d 230; *Harrison Sheet Steel Co. v. Lyons,* 15 Ill. 2d 532, 155 N.E.2d 595; *Perlman v. First National Bank,* 15 Ill. App. 3d 784, 305 N.E.2d 236; *Kimbrough v. Parker,* 344 Ill. App. 483, 101 N.E.2d 617.