CERRO COPPER PRODUCTS CO. *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.—(UNION ELECTRIC COMPANY, Cross-Plaintiff-Appellee, *v.* ILLINOIS COMMERCE COMMISSION, Cross-Defendant-Appellee.)

Fourth District   No. 15072

Opinion filed November 8, 1978.—Rehearing denied November 29, 1978.

Randall Robertson, of Lueders, Robertson & Konzen, of Granite City, and John P. Meyer, of Danville, for appellants.

William Jaudes, of Union Electric Company, of St. Louis, Missouri, and Robert Broderick, of Pope and Driemeyer, of Belleville, for appellee Union Electric Company.

William J. Scott, Attorney General, of Chicago (Hercules Bolos and James E. Weging, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Cerro Copper and other industrial intervenors timely appeal, pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1977, ch. 110A, par. 307), the trial court's denial of the intervenors' petition for a stay pending appeal. For the reasons that follow, we reverse and remand with directions.

On March 14, 1977, Union Electric (UE) filed a proposed 17.5% rate increase before the Illinois Commerce Commission (Commission). The Commission suspended the proposed rates. After numerous hearings, at which the industrial intervenors participated, the Commission's order was entered on February 8, 1978. In that order, the Commission stated it was of the "opinion that any increase in Illinois electric operating revenues

allowed by this Order should be assigned to the various service classifications utilizing *approximately the same percentage increase* including customers served under Service Classifications 6 and 9 * * *." (Emphasis added.) The order further provided the Commission was committed to the establishment of just and reasonable rates which did not provide any preference or advantage to any person or corporation or subject them to any disadvantage. The Commission found UE's proposed rates to be too high and the rate structure then in effect to be unreasonably low. UE was directed to file rates as shown by "Appendix A" attached to the order. Those rates would enable UE to earn Illinois operating income of $19,155,000; the Commission found the 9.25% rate of return provided as fair, just, and reasonable.

Both UE and the industrial intervenors petitioned for rehearing before the Commission. Both petitions were denied on March 22, 1978. On April 7, 1978, the industrial intervenors appealed to the circuit court of Jersey County. Union Electric appealed to that court on April 19. The appeals were later consolidated. On June 28, 1978, the industrial intervenors filed a petition for stay of the Commission's order pending appeal, pursuant to section 71 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 75). The petition alleged the rates entered under the February 8 order were not consistent with the Commission's stated intent of increasing utility rates among the various service classifications at "approximately the same percentage."

At the July 27, 1978, hearing on the petition, Maurice Brubaker, testifying for the industrial intervenors, stated that the February 8 Commission order provided UE an overall 10.92% increase in electric rates. Brubaker found that the "Appendix A" rates were not distributed equally among the service classifications. The increase in rates to residential customers was 8.3% and an 8.86% increase was imposed on small industry, while Rate 6 (appellant Shell Oil) received a 12.56% increase and Rate 9 (to which other intervenors belong) a 12.55% increase.

Rather than seeking a stay of the *entire* rate increase, the industrial intervenors asked the trial court to stay only that portion of the order's Rate 6 and 9 which exceeded a 10.92% rate increase spread equally among the existing service classifications. Brubaker stated that regarding Rate 6, the amount in dispute was 1.1% of each monthly billing (before fuel adjustment); for Rate 9 intervenors the figure was 1.5% of each monthly billing (before fuel adjustment). After argument, the trial court denied the petition, stating, in part, "[W]hen the Legislature was talking about great or irreparable damage, they were talking about something other than monetary loss * * *." In its August 7, 1978, written order, the court stated the industrial intervenors would be damaged monetarily if they were compelled to pay the February 8 order's Rate 6 and 9 and the intervenors'

contention that those rates were improper was successful on appeal. The written order denied the petition and stated the industrial intervenors failed to show great or irreparable damages contemplated by section 71. Petitioners timely filed their notice of appeal under Rule 307 on August 21, 1978.

The amount of money involved is not insignificant. That small portion of the February 8, 1978, rate increase sought to be stayed by the industrial intervenors is in excess of $410,000 annually.

Section 71 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 75) provides, in pertinent part:

> "The pendency of an appeal shall not of itself stay or suspend the operation of the rule, regulation, order or decision of the Commission, but during the pendency of the appeal the circuit court, or the reviewing court, as the case may be, in its discretion may stay or suspend, in whole or in part, the operation of the Commission's rule, regulation, order or decision. * * *
>
> No order so staying or suspending a rule, regulation, order or decision of the Commission shall be made by the court otherwise than upon 3 days' notice to the Commission and after a hearing, and if the rule, regulation, order or decision of the Commission is suspended, the order suspending the same shall contain a specific finding based upon evidence submitted to the court, and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner, and specifying the nature of the damage."

Notice was properly given before the July 27, 1978, hearing.

In *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, the Illinois Supreme Court addressed the issue of the right of a shipper to recover monies from a company whose rates were fixed by the Commission. Chicago Terminal filed a schedule of rate increases of almost 100% and, in early 1947, the Commerce Commission found the rates to be reasonable. Mandel Brothers had opposed the increase and appealed to the circuit court of Cook County. Almost two years to the day from the Commission order, the circuit court set aside the rate increase. There was no further appeal.

Mandel brought an action for reparations before the Commission, which was denied. On appeal to the circuit court, Mandel was granted $187.81 of the claimed $8,342.77 overpayment. Both Mandel and Chicago Terminal appealed to the supreme court.

Justice Schaefer wrote that the common law right to recover reparations for unreasonable charges by public utilities has been superseded by section 72 of the Public Utilities Act. The fundamental

issue was whether a rate approved as reasonable by the Commerce Commission can be termed an "excessive" rate for reparation purposes. The court held it could not be so termed, "even though the rate approved by the commission has subsequently been set aside upon judicial review." (2 Ill. 2d 205, 209, 117 N.E.2d 774, 776.) Justice Schaefer pointed out that the Public Utilities Act requires the public utility to charge the rate approved by the Commission. (See Ill. Rev. Stat. 1977, ch. 111 2/3, par. 37.) While Mandel Brothers argued the circuit court decision setting aside the Commission's rate order was an adjudication that the rates were void from the outset and therefore "excessive," the court stated that to ascribe such an effect to the circuit court's decision would "contradict" the Act's scheme. Justice Schaefer, quoting portions of section 71, noted Mandel Brothers did not request the circuit court to stay the rate order. See also *Illini Coach Co. v. Illinois Highway Transportation Co.* (1960), 25 Ill. App. 2d 168, 166 N.E.2d 161.

Under the dictates of *Mandel Brothers*, the industrial intervenors may not get back any monies paid to UE under the February 8 rate order, if the intervenors succeed on appeal, unless a stay order is obtained. Clearly, the payment of monies which cannot be later refunded if the appeal is successful unless a stay is entered is great or irreparable injury under section 71 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 75). The trial court's determination that money damages, which it found to exist, were not great or irreparable injury was erroneous. We hold payment of a Commission-set rate and the inability to get a refund of any excess payments if the rates are set aside on appeal constitutes great or irreparable injury. The trial court abused its discretion in failing to grant the intervenors' petition for a stay. *Mandel.*

Oral argument in this case occurred October 18, 1978. On October 19, this court entered an order reversing and remanding the cause to the circuit court with directions to enter an order, pursuant to section 71 of the Public Utilities Act, granting the intervenors' petition for a stay pending appeal. The order provided the circuit court shall specify that the revenues affected equal only 1.1% (before fuel adjustment) of each monthly billing of the Rate 6 intervenor, and 1.5% (before fuel adjustment) of each monthly billing for Rate 9 intervenors. This court directed the circuit court to fix in its order a procedure whereby the revenues affected by the stay are paid by the intervenors directly into an escrow account, drawing interest, during the pendency of appeal in this cause. Alternatively, we stated the circuit court may provide in its order that the revenues subject to escrow be paid directly to Union Electric on the express promise and agreement of Union Electric that in the event the intervenors succeed in overturning the Commerce Commission's

February 8, 1978, order regarding Rate 6 and Rate 9 schedules, Union Electric shall promptly refund to each intervenor the amounts which that particular company otherwise would have paid into escrow.

Reversed and remanded with directions.

REARDON and TRAPP, JJ., concur.